[Civ. No. 15596. First Dist., Div. Two. Apr. 27, 1954.]

VIOLA SHENSON, Plaintiff and Respondent, v. JOSEPH SHENSON, Defendant and Appellant; LILLIAN BERMAN et al., Cross-complainants and Appellants.

Albert Picard and William R. Lowery for Plaintiff and Respondent.

Leo R. Friedman for Defendant and Appellant.

M. Mitchell Bourquin, John E. Lynch and Jefferson E. Peyser for Cross-complainants and Appellants.

DOOLING, J.—This is an action for an accounting of rents of a certain building over a period of approximately 15 years. Plaintiff Viola Shenson was awarded $9,007.25 against Joseph Shenson, cross-complainant Lillian Berman $3,589.52 and cross-complainant Lorraine Kaplan $3,349.52. Appeal was taken by defendant Joseph from the above judgment entered in favor of plaintiff and cross-complainants and from the order denying his motion for a new trial. Both cross-complainants also appealed from the judgment on the ground that the awards to them should be increased in amount.

All the parties involved were coowners of an undivided interest in a certain piece of business property referred to as 1143 McAllister Street. Pursuant to a decree of partition the building was sold to a stranger on September 5, 1950.

Plaintiff Viola acquired her one-fifth interest in the real property on October 10, 1935. Cross-complainant Lorraine Kaplan is executrix of the last will and testament of Samuel Baker, and his one-fifth interest in the property was acquired July 22, 1936. From July 21, 1944 until his death on May 12, 1945, Baker had a four-fifteenths undivided interest and this interest passed to his estate. Cross-complainant Lillian Berman had an undivided one-fifth interest in the same real property dating from February 4, 1936, and a four-fifteenths interest from July 21, 1944.

In 1946 the plaintiff Viola, as owner of an undivided one-fifth interest in the building, filed an action against Joseph and the other cotenants for an accounting, alleging that Joseph had leased certain portions of the property and had retained the rents, income, etc., without accounting to his cotenants.

Defendants Lorraine and Lillian filed answers and also cross-complained against the other cotenants. Like the plaintiff they prayed for an accounting of all rents, issues, profits and moneys obtained by defendant Joseph from the property concerned.

After Viola had filed her complaint, Lillian brought an action for partition, which was so decreed by the court. The property was sold, and at the time of distribution of the profits, defendant Joseph filed a claim for reimbursement for payment of taxes. Thereafter it was stipulated that the partition action and suit for accounting filed by Viola be consolidated for purposes of trial.

A meat market whose owners and operators varied from time to time occupied the building during the entire period covered by this litigation. In 1933 the market was operated by Shensons Meat Market, a corporation. The defendant and Samuel Baker, whose executrix is one of cross-complainants, were among the owners. Also in 1933 Jesse Shenson, who at that time held legal title to the building, leased the building to Shensons Meat Market for 10 years at $200 per month. Later in 1933 the market business was transferred to ''Shenson Bros.'' a corporation, who assumed the lease. In 1937 the business along with the lease was transferred to ''Shenson Bros.'' a partnership. In 1942 Lillian, one of the cross-complainants, succeeded to an interest in the partnership. In 1944 the two cross-complainants and defendant owned the entire interest in the meat market. In 1945 Baker died and in 1948 Lillian sold her interest in the market to Joseph who then became sole owner of the market.

Joseph took title to the real property from Jesse Shenson on October 10, 1935. At that time he admittedly held as trustee for the other coowners. In 1935 Joseph deeded a one-fifth interest to Viola. In 1936 another coowner deeded a one-fifth interest to Lillian, and Joseph deeded a one-fifth interest to Sam Baker. In 1944 Lillian, Joseph and Sam acquired an additional one-fifteenth interest from Louis Shenson, another coowner. In 1950 the building was sold under decree in the suit for partition.

When the property was originally purchased there was a $10,000 mortgage on it. On July 22, 1936, and again on March 2, 1938, the mortgage was renewed in the sum of $15,-000. The first mortgage of $15,000 was signed by Joseph and Frances Shenson only. The second mortgage of $15,000 was signed by Joseph and Frances Shenson and Sam and Eva Baker. Five thousand dollars of the money obtained from the renewal of the first mortgage was put into the business. The sum of $13,081.88 of the second renewal mortgage was used to pay off the bank. The remainder went into the business. One hundred and fifty dollars per month principal and interest was paid on the mortgage by the meat market business.

At the time that Joseph took title to the building in 1935 an account was set up on the books of the meat market headed "Joseph Shenson, Rent Account." Thereafter the sum of $200 per month was regularly credited on this account as rent, and the total payments made by the meat market business upon the several notes secured by mortgages on the real property and all real property taxes, which were also paid by the meat market business, were entered as charges against this account.

During all of this time separate partnership income tax returns were made for the cotenants of the real property, under the designation: "Eleven Forty Three McAllister Building." These returns were prepared by the same accountant who prepared the returns for the meat market business and were signed by Joseph Shenson. In these returns $2,400 was entered as rent received and deductions were taken for all payments on the notes secured by mortgages and for all payments of real property taxes. At the same time the income tax returns for the meat market business took credit for the rental payments as deductions. The earlier returns showed greater rental payments than $2,400 per year, because in

those years the meat market business was also conducting other stores in other property rented from strangers to this litigation, but the later returns when the business was exclusively conducted on the real property here involved, show rent: $2,400. It is a fair inference that this same practice was followed regularly through the years. These income tax returns were likewise signed by Joseph Shenson. It may not be questioned that these income tax returns are to be treated as admissions against interest by Joseph Shenson. (*Balkema* v. *Deiches*, 90 Cal.App.2d 427, 430 [202 P.2d 1068]; *Heck* v. *Heck*, 63 Cal.App.2d 470 [147 P.2d 110].)

The trial court found in Finding VI: "That . . . from the 10th day of October, 1935, to the 31st day of May, 1943, said defendant Joseph Shenson personally and as trustee for the account and benefit of plaintiff and said cross-complainants credited to and for their account the sum of two hundred (200) dollars per month as rent for said real property; that said defendant Joseph Shenson has refused to pay to said plaintiff or said cross-complainants any of said rent so credited by him to them."

This finding carries only to May 31, 1943 (the date of the expiration of the lease for 10 years at $200 per month previously mentioned). It finds ample support in the evidence of the books kept under Joseph's directions and the income tax returns signed and filed by him. There was some evidence that the $200 per month rent was only a bookkeeping entry, but against this evidence the trial court was entitled to weigh not only the books themselves but also the income tax returns signed by Joseph Shenson which charged to each cotenant as income his share of the gross rental of $200 per month, less deductions; and the income tax returns of the business, also signed by Joseph, which deducted the rent as paid from the income received by the business during the taxable year.

From the expiration of the lease at $200 per month rental on May 31, 1943, the court found in Finding X: "That the reasonable rental value of said real property from and after May 31, 1943, to the date of the partition sale . . . was the sum of five hundred (500) dollars per month; that no part thereof has been paid or accounted for by said defendant Joseph Shenson to plaintiff or cross-complainants."

That the holding over after the expiration of the lease was with the consent express or implied of all of the cotenants cannot be disputed. Under these circumstances we are satisfied that the correct rule is that the tenancy con-

tinued at the same rental as provided in the lease, i.e., $200 per month. ■ The rule is thus stated in *Conner* v. *Garrett*, 65 Cal.App. 661, 664 [224 P. 786], quoting 16 Ruling Case Law 1161:

''As a general rule the tendency (tenancy) arising from the tenant's holding over with the consent of the landlord is presumed to be on the same terms as the original lease, so far as they are applicable to the new tenancy. Thus it is generally held that the terms of the original lease as regards the amount and time of payment of rent apply.''

■ The distinction is made in this regard between a tenant holding over with the consent of his landlord and a tenant holding over wrongfully without his landlord's consent. The tenant holding over wrongfully is liable for the reasonable value of the use and occupation; the tenant holding over with his landlord's consent is liable only for the rental fixed by the lease. (*Cowell* v. *Snyder*, 15 Cal.App. 634 [115 P. 961].)

This is the generally accepted rule throughout this country. ''A tenant who remains in possession after the expiration of his lease, with the express or implied consent of the lessor, may be liable for the same amount of rent as that reserved in the lease . . . If the tenant holds over without authority under such circumstances as to negative the landlord's consent to the holding . . . the tenant may be liable for the reasonable value of the use and occupation of the premises . . .'' (52 C.J.S., Landlord and Tenant, § 505, pp. 291-292.) The California cases relied upon by respondents are consistent with this distinction. ■ It follows that the court erred in any judgment based upon the value of the use and occupation at $500 per month or anything in excess of the $200 per month fixed in the lease under which the tenancy had its inception.

■ This brings us naturally to one of the most serious criticisms of the findings. Appellant Joseph Shenson sought credit against the rental due the cotenants not only for all real property taxes paid on the property and that portion of the payments on principal and interest properly attributable to the original $10,000 mortgage, but also for all moneys expended for repairs and improvements on the property and for insurance. The trial court failed to cast any detailed account only finding that after giving Joseph Shenson all proper credits the balances for which judgment was given were

due the respective parties. Under the authority of *Whann* v. *Doell*, 192 Cal. 680 [221 P. 899] and *Margolis* v. *Leonard & Holt*, 94 Cal.App. 716 [271 P. 758], these findings are insufficient if the appellate court cannot find from the record the manner in which the account was calculated and the items which entered into it. Respondents are not even agreed among themselves on this matter. Respondent Viola Shenson asserts in her brief: ''Appellant was not given credit for the payment of interest and principal on the $15,000 renewal mortgages of 1936 and 1937. In the first place Viola Shenson never signed said mortgages nor was she a party to them . . . Neither as lessee or as cotenant did appellant have the right to mortgage the premises without the consent of the respondent.'' The other respondents assert with equal positiveness that the portion of the payments made on the renewal mortgages which is properly attributable to the original $10,000 indebtedness was taken into account by the court in striking the account. No one of the three has favored us with a computation showing the mathematical process by which whatever allowance was made for payments on the mortgages was arrived at by the court. We have taken the respective interests in the real property owned by each respondent and have attempted such calculations on our own account without being able to arrive at the amounts actually awarded by the judgment. From these circumstances we are satisfied that under the authorities above cited the findings are not sufficiently detailed to support the judgment.

Neither *Sears* v. *Rule*, 27 Cal.2d 131 [163 P.2d 443] nor any other case cited by respondents departs from the rule of *Whann* v. *Doell, supra.* ▮ The rule of the Whann case is only a special application of the general rule reiterated in *Fairchild* v. *Raines*, 24 Cal.2d 818, 830 [151 P.2d 260]: ''Ever since the adoption of the codes, it has been the rule that findings are required on all material issues raised by the pleadings *and evidence,* unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed.'' (Emphasis ours.)

For these reasons the judgment must be reversed, but other issues are involved which will face the court on the going down of the remittitur. ▮ Appellant Joseph Shenson is entitled to credit for taxes on the real property actually paid and for the proportion of the mortgage payments properly attributable to the original $10,000 loan. One cotenant is entitled to credit from his cotenants for expenditures necessarily

made for the protection of the common property. (13 Cal. Jur.2d, Cotenancy, § 41, p. 329.) The taxes paid and the renewal mortgages to the extent of the $10,000 mortgage lien on the common property fall within this rule.

■ Whether the payments for repairs and insurance were for the preservation of the common property or were expenditures of the lessees for their own benefit is a question of fact. None of these expenditures was included in the partnership income tax returns made for the owners of the real property by Joseph Shenson. All of these expenditures were included as deductions in the income tax returns of Joseph Shenson for the business. This constitutes an admission against interest by Joseph which would support the trial court's finding that these items are not a proper charge against the cotenants.

Appellant Joseph Shenson also argues that for the periods when Sam Baker and Lillian Berman were partners with him in the business his and their duty to pay rent would *pro tanto* cancel one another out since all were both tenants and co-owners of the property. This overlooks the fact that Sam Baker's and Lillian Berman's receipts from the business were reduced by the amount of the rental payments of $200 made to Joseph Shenson while they were partners and that they have therefore already paid out as tenants their share of, but have not received as coowners any portion of, these rentals. The pleadings sufficiently charge that Joseph Shenson collected rents from the property for which he has not accounted and to the extent of the $200 per month the evidence is sufficient to establish these allegations.

The cross-complainants' appeals raise only the question that from the termination of the lease they are entitled to recover on the basis of $500 per month reasonable rental value. We have disposed of this question adversely to them.

Judgment reversed with costs to appellent Joseph Shenson.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied May 27, 1954, and the following opinion was then rendered:

THE COURT.—In their briefs on this appeal respondents Berman and Kaplan included figures which they then claimed supported the exact amounts of the judgments awarded to them. As we pointed out in our opinion there was no mathe-

matical calculation which we could discover from the record which would support the judgments as given. Belatedly in their petition for rehearing respondents Berman and Kaplan admit this fact and now claim for the first time that the trial court made a mathematical error of $54 in each of their judgments. They accordingly ask us now to make new findings and amend the judgments in their favor accordingly. This request comes too late. ■■■ Counsel may not argue an appeal piecemeal by raising new questions for the first time on petition for rehearing. (*Bradley* v. *Bradley*, 94 Cal.App. 2d 310 and cases cited at p. 312 [210 P.2d 537, 211 P.2d 638].)

However, there is a more fundamental objection to our doing what counsel ask. ■■■ Under the rule of *Whann* v. *Doell*, 192 Cal. 680, 684-685 [221 P. 899], the lack of findings showing the manner in which the trial court disposed of an accounting is not fatal to the judgment if the appellate court can ascertain from the record the manner in which the court arrived at its judgment, i.e., if by allowing certain items and disallowing others the appellate court can arrive at the amount of the judgment, it then becomes clear from the record how the judgment was arrived at by the trial court. The difficulty here is, that as counsel now admit, this cannot be done. They ask us to assume that the trial court allowed certain items *but in doing so made a mathematical error.* Such an assumption would take us into the field of pure speculation.