[Civ. No. 68458. Second Dist., Div. Seven. Dec. 14, 1983.]

CHESAPEAKE INDUSTRIES, INC.,
Plaintiff, Cross-defendant and Appellant, v.
TOGOVA ENTERPRISES, INC.,
Defendant, Cross-complainant and Respondent.

902

COUNSEL

James R. Tweedy and Richard G. Howard for Plaintiff, Cross-defendant and Appellant.

Grayson, Gross, Friedman & Phillips and Marvin Gross for Defendant, Cross-complainant and Respondent.

OPINION

**JOHNSON, J.—**

INTRODUCTION

This appeal arises from an action for an accounting under a lease agreement in which the lessor was awarded prejudgment interest under Civil Code section 3287.[1] We conclude the amount of damages owed was not sufficiently certain or calculable and thus prejudgment interest was not appropriate.

I. STATEMENT OF FACT AND PROCEEDINGS BELOW

Appellant Chesapeake Industries, Inc. (Chesapeake) leased real property from respondent Togova Enterprises, Inc. (Togova) by written lease agreement dated September 28, 1967. The term of the lease was ten years beginning November 1, 1967. The total rent under the lease was $474,000 with $3,950 due on the first of each calendar month.

In the event of a breach of covenant or agreement, section 14 of the lease provided Togova the option either to terminate the lease or to relet the premises and hold Chesapeake liable for any deficiency incurred from the following: (1) the rent monies collected from reletting the premises, (2) costs of reletting, (3) costs of alterations and repairs to premises and (4) any other indebtedness due the lessor from the lessee.

Chesapeake vacated the premises on or about February 26, 1974. Over three-and-half years still remained on the ten-year lease. In a subsequent legal action, Togova recovered possession and obtained a judgment for partial damages against Chesapeake. Further, in accord with section 14 of the agreement, the lease remained in effect until October 31, 1977, with Chesapeake liable for any deficiency incurred during that period. Togova subsequently relet the premises.

On July 13, 1978, Chesapeake brought an action for an accounting for all rents received by Togova from the reletting of the premises for the remainder of the lease.[2] Chesapeake sought to recover any excess sums received

---

[1]The relevant language of Civil Code 3287 is as follows: (a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

[2]Chesapeake's complaint for an accounting is not in the record.

by Togova from reletting the premises over what Togova would have received under the lease agreement with Chesapeake. Togova responded by filing a cross-complaint on September 18, 1978, alleging that it had received "substantially less revenue and rents" through reletting than it would have received under the lease with Chesapeake. Togova recited in its cross-complaint that it did not know the exact amount Chesapeake owed under the lease but that an accounting would be prepared and provided to Chesapeake informing it of the deficiency. Togova averred that the deficit would exceed $115,000.

After a three-day nonjury trial, the court found both the complaint and cross-complaint were actions for an accounting for the period of February 26, 1974, through October 31, 1977. Furthermore, after deciding it was not unreasonable for Togova to have relet the premises, the trial court entered judgment for Togova.

The trial court concluded Chesapeake owed Togova the sum of $50,323.84. It reached this net deficit figure by adding the gross rent monies Chesapeake owed for the rest of the lease period, repair and improvement costs, brokers' costs, and taxes and then subtracting credits for Chesapeake, principally the rent monies Togova collected from the substitute tenant.[3] In addition, the court awarded Togova $25,245.81 in prejudgment interest for the period of January 1, 1975, to March 1, 1982, plus costs. Subsequently, the judgment was modified to reflect a revised deficit of $34,830.04 and a prejudgment interest award of $15,493.80. The parties stipulated to the revised judgment and to a second revision of the prejudgment interest award from $15,493.80 to $16,367.13 for the period of January 1, 1975, to July 26, 1982. Chesapeake appeals only from the portion of the judgment awarding prejudgment interest.

---

[3]The eight-page accounting taken into evidence by the trial court was not included as part of the record. The composition of the award was reconstructed from Togova's exhibits which were accepted in evidence by the trial judge, but the exact valuation of the items considered in the account cannot be determined. In *Shenson* v. *Shenson* (1954) 124 Cal.App.2d 747, 756 [269 P.2d 170], the court stated: ". . . the lack of findings showing the manner in which the trial court disposed of an accounting is not fatal to the judgment if the appellate court can ascertain from the record the manner in which the court arrived at its judgment, i.e., if by allowing certain items and disallowing others the appellate court can arrive at the amount of the judgment, it then becomes clear from the record how the judgment was arrived at by the trial court."

*Shenson* is distinguishable from the instant case in that the amount of the deficiency as determined by the accounting is not at issue rather the process by which the trier of fact determined the amount of the deficit is dispositive.

II. Legal Principles and Policies Governing Award of Prejudgment Interest.

Civil Code section 3287, subdivision (a) provides for the payment of prejudgment interest to every person entitled to receive damages which are (1) certain or (2) "capable of being made certain by calculation" if (3) the right to receive such damages vested on a particular day.[4] The dispute in the instant case centers upon whether the amount due under the lease, if any, was certain.

There are two lines of authority which instruct us in the proper award of prejudgment interest under section 3287, subdivision (a). ▇ First, interest traditionally has been denied on unliquidated claims because of the general equitable principle that a person who does not know what sum is owed cannot be in default for failure to pay. (*Cox* v. *McLaughlin* (1888) 76 Cal. 60, 67 [18 P. 100].) Thus, no prejudgment penalty is assessed against a litigant for failing to pay a sum which is unascertainable prior to judgment.[5] (See Comment, *Interest as Damages in California* (1958) 5 UCLA L.Rev. 262, 263, fn. 6 [interest disallowed on unliquidated damages on principle that defendant not at fault for nonpayment of unascertainable sum].)

The second line of authority advances the countervailing policy that injured parties should be compensated for the loss of the use of their money during the period between the assertion of a claim and the rendition of judgment. (See *McConnell* v. *Pacific Mutual Life Ins. Co.* (1962) 205 Cal.App.2d 469, 478 [24 Cal.Rptr. 5]; Note, *Developments in the Law: Damages—1935-1947* (1947) 61 Harv.L.Rev. 113, 136 [interest on amount of claim is standard measure for loss of use of money during the period between the accrual of claim and judgment]; Comment, *Interest As Damages in California, supra,* 5 UCLA L.Rev. 262 [person deprived use of money is denied opportunity of investing it and receiving interest on the

---

[4] Since we decide that in the instant case the damages were not certain or capable of being made certain by calculation, we do not reach the question whether the right to receive damages vested on a specific day.

[5] Clearly, this principle does not apply to the wrongful detention of a known or ascertainable amount due under a contract. The court in *Hansen* v. *Covell* (1933) 218 Cal. 622, 629-630 [24 P.2d 772, 89 A.L.R. 670], recognized a debtor could not defeat a creditor's entitlement to prejudgment interest on a liquidated claim by cross-claiming an unliquidated offset or by delay in payment amounting to "vexatious conduct" by the debtor. Chesapeake argues that it did not wrongfully withhold payment of the deficit under the lease not only because it did not know the sum due but also because Togova's cross-complaint asked for damages according to an accounting. We agree. The issue of wrongful detention is not raised by the facts of this appeal.

sum].) This policy has been implemented through a generally liberal construction of "certainty" under section 3287. (See *Cox* v. *McLaughlin, supra,* 76 Cal. 60, 68-69 [tracing modification of early rule from ascertainment of sum due from face of contract to reference to standards providing debtor with "proximate knowledge" of amount due]; see also 14 Cal.Jur.2d, Damages, § 77.)

■ The injured party's right to prejudgment interest is further protected by the rule that the legal interest allowable under section 3287 cannot be defeated by setting up an unliquidated counterclaim as an offset. (*Hansen* v. *Covell, supra,* 218 Cal. 622, 629; *McCowen* v. *Pew* (1912) 18 Cal.App.482, 488 [123 P. 354]; *California Lettuce Growers, Inc.* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 487 [289 P.2d 785, 49 A.L.R.2d 496] [reaffirming *Hansen* and holding that unliquidated counterclaims do not affect the character of the debt]; *Muller* v. *Barnes* (1956) 139 Cal.App.2d 847, 850 [294 P.2d 505].) One effect of this rule is to encourage mitigation of damages. (*Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 409 [55 Cal.Rptr. 1, 420 P.2d 713].) ("If the rule were otherwise, a plaintiff might be encouraged to forego opportunities to mitigate damages so as not to jeopardize his right to prejudgment interest.")

These competing policy considerations have led the courts to focus on the *defendant's* knowledge about the amount of the plaintiff's claim. The fact the plaintiff or some omniscient third party knew or could calculate the amount is not sufficient. ■ The test we glean from prior decisions is: did the *defendant* actually know the amount owed or from reasonably available information could the defendant have computed that amount. Only if one of those two conditions is met should the court award prejudgment interest. (*Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 690 [48 Cal.Rptr. 901]; *Cox* v. *McLaughlin, supra,* 76 Cal. 60, 70; *McConnell* v. *Pacific Mutual Life Ins. Co.* (1962) 205 Cal.App.2d 469, 479 [24 Cal.Rptr. 5]; *Gray* v. *Bekins* (1921) 186 Cal. 389, 399 [199 P. 767].)

III. PREJUDGMENT INTEREST NOT ALLOWABLE BECAUSE CHESAPEAKE DID NOT KNOW AND COULD NOT CALCULATE AMOUNT DUE UNDER THIS COMPLEX LEASE PROVISION.

In this case the lessee, Chesapeake, is only liable for prejudgment interest on the net sum due under this lease if it knew or could have calculated the amount of that deficit. ■ We hold that the trial court erred in granting an award of $16,376.13 in prejudgment interest because Chesapeake's liability under section 14 of the lease agreement was not ascertainable on the

information reasonably available to this defendant at the time the claim was filed.

### A. Creditor's Cross-Claim for Accounting Is Prima Facie Indication That Claim Not Capable of Calculation.

In bringing cross-claims for an accounting both Chesapeake and Togova asserted that they did not know and could not calculate the amount of Chesapeake's liability under section 14 of the lease agreement. This strongly suggests any deficiency under section 14 was not certain. (See 14 Cal.Jur.2d, Damages, § 78 at p. 704.) Consistent with this view, courts have reasoned that "where an accounting is required in order to arrive at a sum justly due, interest is not allowed." (*Stockton Theatres, Inc.* v. *Palermo* (1953) 121 Cal.App.2d 616, 632 [264 P.2d 74] [no abuse of discretion in refusing prejudgment interest after long and complicated accounting]; *Schmidt* v. *Waterford Winery, Ltd.* (1960) 177 Cal.App.2d 28, 34-35 [1 Cal.Rptr. 874] [no prejudgment interest allowed where ascertainment of amount due under contract required an accounting]; *Williams* v. *Flinn & Treacy* (1923) 61 Cal.App. 352, 357 [214 P. 1024] [no prejudgment interest allowed in accounting case where amount asked for by plaintiff varied greatly from what court found to be due because not certain under section 3287]; 11 *Williston on Contracts* (3d ed. 1968) § 1413 at p. 626, fn. 13; 1 Cal.Jur.3d, Accounts and Accounting § 79.)

Disallowing prejudgment interest in an accounting action is consistent with the principle previously noted that no prejudgment interest is "allowable when damages cannot be computed except on conflicting evidence . . . because of the absence of established or reasonably ascertainable market prices or values. In such cases, since the amount of the damages cannot be resolved except by accord, verdict or judgment, interest prior to judgment is not allowable." (*Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380]; *Cox* v. *McLaughlin, supra,* 76 Cal. 60, 71-72.)

In the instant case the trial judge examined an eight-page accounting and heard oral testimony in a trial which took place over three days. Although the accounting was not included in the record, we can infer that the trial judge examined the evidence, disallowed certain items, and credited others. The trial court was "compelled to select from conflicting evidence" in determining the deficiency under section 14 of the lease. (See *Lineman* v. *Schmid, supra,* 32 Cal.2d 204, 212-213 [held claim unliquidated because record showed no established market price for contracted flour produced from special formula].)

Although an accounting action is prima facie evidence a claim is uncertain, we do not foreclose the possibility of prejudgment interest in an accounting action where equity demands such an award. We decide only that under the circumstances of this case neither legal rules nor equitable consideration would allow Togova to cross-claim for an accounting to determine the amount due under the lease and then charge Chesapeake with prejudgment interest on the same adjudicated sum.

### B. Fact Togova Did Not Know and Could Not Calculate Amount Due Under Lease Further Supports Proposition That This Claim Was Not Calculable by Chesapeake.

Togova stated in its cross-complaint it did not know the "exact amount" due from Chesapeake but that it believed the deficit to exceed $115,000. This deficit arose from section 14 of the lease agreement which states as follows: "14. . . . Should lessor elect to re-enter, as herein provided, . . . he may either terminate this lease, as provided above, or he may from time to time, without terminating this lease, re-let said premises or any part thereof for such term or terms and at such rental or rentals and upon such other terms and conditions as lessor in his sole discretion may deem advisable with the right to make alterations and repairs to said premises. Rentals received by lessor from such re-letting shall be applied: first, to the payment of any indebtedness, other than rent, due hereunder from lessee to lessor; second, to the payment of rent due and unpaid hereunder; third, to the payment of any cost of such re-letting; fourth, to he payment of the cost of any alterations and repairs to the premises; and the residue, if any, shall be held by lessor and applied in payment of future rent as the same may become due and payable hereunder. Should such rentals received from such re-letting during any month be less than that agreed to be paid during that month by lessee hereunder, then lessee shall pay such deficiency to lessor. Such deficiency shall be calculated and paid monthly. Lessee shall also pay to lessor, as soon as ascertained, the costs and expenses incurred by lessor in such re-letting or in making such alterations and repairs. . . ."

Under section 14 Togova not only had sole discretion to relet the premises according to the terms and conditions of its choice but also sole discretion to make repairs and alterations to the premises and hold Chesapeake liable for them. Moreover, section 14 specified an order of payment of monies collected from reletting the premises.

Even though Togova had sole discretion under the lease to make decisions and financial commitments as well as access to full information of the costs incurred, it did not know the amount of the deficit under the lease. ∎

Admittedly, inexact knowledge of the amount of indebtedness at the time the claim is filed does not automatically bar an award of prejudgment interest. (*Foley* v. *U. S. Paving Co.* (1968) 262 Cal.App.2d 499, 508 [68 Cal.Rptr. 780]; *Pizer* v. *Brown* (1955) 133 Cal.App.2d 367, 373-374 [283 P.2d 1055], cert. den. *sub nom. Brown* v. *Pizer* (1956) 351 U.S. 982 [100 L.Ed. 1496, 76 S.Ct. 1045].) ██ Still when considered with other factors such as the degree of discrepancy between the amount claimed and the final judgment in this case, the plaintiff's own admitted uncertainty supports the conclusion that the defendant was in no position to know or calculate the deficit incurred under section 14 of the lease.

### C. Large Discrepancy Between Amount Claimed by Creditor and Final Judgment Further Supports Conclusion Sum Due Was Not Calculable by Chesapeake.

The court eventually reduced Togova's initial estimate of $115,000 owed by Chesapeake to a deficit of $34,830.04. ██ A minor discrepancy between the amount claimed and the amount awarded does not bar prejudgment interest. (*Marine Terminals Corp.* v. *Paceco, Inc.* (1983) 145 Cal.App.3d 991, 997 [193 Cal.Rptr. 687] [$2,461.80 error in invoices submitted to defendant did not render sum uncertain and bar prejudgment interest]; *Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 408-409 [55 Cal.Rptr. 1, 420 P.2d 713] [$7,000 difference between amount claimed and judgment did not preclude prejudgment interest]; *Charlton* v. *Pan American World Airways* (1953) 116 Cal.App.2d 550, 554-555 [254 P.2d 128] [$47.80 reduction in claim from duplication of charges in vouchers submitted by plaintiff to defendant did not make amount due incapable of calculation]; *Koyer* v. *Detroit F. & M. Ins. Co.* (1937) 9 Cal.2d 336, 345 [70 P.2d 927].) ██ We do not think, however, a discrepancy in the amount of $80,169.96 representing a 70 percent shrinkage from the initial claim suggests an inconsequential "erroneous omission" or miscalculation of costs by the creditor. (*Coleman Engineering Co.* v. *North American Aviation, Inc., supra,* 65 Cal.2d 396, 408-409; cf. *Conderback, Inc.* v. *Standard Oil Co., supra,* 239 Cal.App.2d 664, 691 [sum not certain where amount prayed for in complaint was amended twice].)

The uncertainty of the deficit is supported further by the fact that the court reduced its own initial $50,323.84 judgment to $34,830.04. (See *Roe* v. *Baggett Transportation Company* (5th Cir. 1963) 326 F.2d 298, 301-302, in which the court looked to the history of the litigation as a measure of uncertainty of the amount due on equipment leases in construing an Alabama prejudgment interest statute.)

## D. Chesapeake Could Not Ascertain Its Liability Because of Togova's Failure to Supply Information From Which It Could Calculate Sum Due.

As discussed previously, the certainty requirement of section 3287, subdivision (a) has been reduced to two tests: (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages.

From the face of the lease, Chesapeake reasonably could ascertain the total amount of indebtedness of $474,000 minus the total monthly rent payments made to Togova until it vacated the premises in February, 1974. Further, we can infer from the underlying judgment that the account was settled at the beginning of the accounting period. The question then is whether Chesapeake reasonably could know the amount due during the accounting period. Because section 14 governed Chesapeake's subsequent liability, we must again examine its terms. As we noted, Togova had sole discretion to relet the premises under the terms and conditions of its choice, to make repairs and alterations, and to apply remitted monies according to a specified order of payment. In effect, Togova not only had sole control over the premises but also was the only party in possession of the data required to determine the extent of Chesapeake's liability under the lease.

This is not a case where the debtor could keep complete records of the transaction from which it could calculate its indebtedness. (Compare *West* v. *Holstrom* (1968) 261 Cal.App.2d 89, 97 [67 Cal.Rptr. 831].) Nor could Chesapeake have calculated its liability from the date of the breach. (Compare *McConnell* v. *Pacific Mutual Life Ins. Co., supra,* 205 Cal.App.2d 469, 479-480.) Indeed much of the critical data was in the sole possession of Togova. We conclude Chesapeake could not have known from a mere reading of section 14 whether a deficit was incurred during the three-yeareight-month duration of the lease or how much that deficit might be at any particular time.

Furthermore, section 14 specified the deficiency should be calculated and paid monthly.[6] It is silent, however, on the question of whose duty it was to calculate this deficit. We believe that this duty to calculate any monthly

---

[6]The relevant language in section 14 is as follows: "Should such rentals received from such re-letting during any month be less than that agreed to be paid during that month by lessee hereunder, then lessee shall pay such deficiency to lessor. Such deficiency shall be calculated and paid monthly. Lessee shall also pay to lessor, as soon as ascertained, the costs and expenses incurred by lessor in such re-letting or in making such alterations and repairs. . . ."

deficit and to inform Chesapeake should lie with Togova because it had access to the information and seeks the prejudgment award. (See *Marine Terminals Corp.* v. *Paceco, Inc., supra,* 145 Cal.App.3d 991, 996-997 [damages " 'capable of being made certain by calculation' " when "data supplied by plaintiff to defendant" (citations)]; *Anselmo* v. *Sebastiani* (1933) 219 Cal. 292, 301 [26 P.2d 1]; *Ansco Const. Co.* v. *Ocean View Estates* (1959) 169 Cal.App.2d 235, 239 [337 P.2d 146]; *Conderback, Inc.* v. *Standard Oil Co., supra,* 239 Cal.App.2d 664, 690-691; *Worthington Corp.* v. *El Chicote Ranch Properties, Ltd.* (1967) 255 Cal.App.2d 316, 324 [63 Cal.Rptr. 203]; *Maurice L. Bein, Inc.* v. *Housing Authority* (1958) 157 Cal.App.2d 670, 686 [321 P.2d 753]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 654, p. 557; compare *Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 798-799, 804 [142 Cal.Rptr. 1] [prejudgment interest allowable where answer to interrogatories provide defendant with sum certain and documentation of valuation]; *General Insurance Co.* v. *Commerce Hyatt House* (1970) 5 Cal.App.3d 460, 474 [85 Cal.Rptr. 317] [itemized accounting and supporting data of all disbursements in response to defendant's interrogatory renders sum certain].)

The record is silent as to whether Togova informed Chesapeake monthly of any alleged deficiency. We reason that either the deficit was not capable of being calculated each month or that Togova was negligent in failing to provide Chesapeake with an accurate accounting. In either event, prejudgment interest is not allowable as a matter of equity. In *Minton* v. *Mitchell* (1928) 89 Cal.App. 361, 372 [265 P. 271], Annot. (1934) 89 A.L.R. 678, 679, plaintiff admitted in his complaint that an accounting was necessary because of his failure to arbitrate. The *Minton* court denied prejudgment interest because "The entire purpose of the action was to strike an account between the parties." (*Id.* at p. 372.) Similarly, in the instant case, from Togova's grossly inaccurate initial estimate and request for an accounting, we can infer that Togova did not supply Chesapeake an accurate monthly accounting which would have informed Chesapeake of any deficit.

Accordingly, we conclude Chesapeake did not have the data necessary to compute the amount due under the lease. ▪ The amount of indebtedness is a "matter of mere calculation" when it can be determined from statements given by the plaintiff to the defendant which are found to be true and correct. (*Anselmo* v. *Sebastiani, supra,* 219 Cal. 292, 301; *Worthington Corp.* v. *El Chicote Ranch Properties, Ltd., supra,* 255 Cal.App.2d 316, 324.) ▪ Chesapeake could not calculate its liability because it did not receive a statement of the account with supporting data from which it could make such a determination. (*Conderback, Inc.* v. *Standard Oil Co., supra,* 239

Cal.App.2d 664, 690-691 [prejudgment interest disallowed because debtor was not provided with supporting data from which it could calculate the sum due]; *Levy-Zentner Co.* v. *Southern Pac. Transportation Co., supra,* 74 Cal.App.3d 762, 804-805 [plaintiff must provide documentation of valuation of damages when such values are not readily available to defendant]; see also *Lacy Mfg. Co.* v. *Gold Crown Mining Co.* (1942) 52 Cal.App.2d 568, 575-576 [126 P.2d 644] [sum certain where debtor was delivered invoices and did not contest account].)

In sum, Chesapeake's liability under section 14 was not a matter of mere calculation because it could not know the amount due from the face of the lease. Nor could Chesapeake calculate its liability since Togova failed to render accurate supporting data of its claim.

■ IV. THIS WAS NOT A LIQUIDATED CLAIM SUBJECT TO OFFSET BY AN UNLIQUIDATED COUNTERCLAIM.

Togova claims the sum collected from reletting the premises under section 14 was in effect an offset to be applied against the total amount due under the lease. It proposes that the sum was certain by the terms of the lease and that its efforts to mitigate damages through the reletting of the premises under section 14 did not render uncertain the amount due under the lease. We disagree with this characterization of the deficiency caused by Togova's actions pursuant to section 14.

In this case Togova did not have—nor did it file—a claim for the relatively certain gross amount Chesapeake *would* have owed had Togova been unable to relet the premises.[7] Instead Togova's initial claim was only for the accumulated "deficiencies" which as we have seen were extraordinarily uncertain and incalculable.

Indeed by the terms of section 14 of the lease once Togova relet the premises it was only entitled to the net deficiencies not the hypothetical gross amount of rent Chesapeake otherwise might have owed. Chesapeake would only owe a net sum each month and that net sum would change

---

[7]This was not a case where it would have made sense for Chesapeake to have delivered to Togova the hundreds of thousands of dollars it would have owed had the premises not been relet and then to have pursued an accounting to determine how much Togova should return because of what it actually earned from the new tenant. In this instance, Togova would have had to return all but $34,830. Yet apparently, that is the only safe course Chesapeake could have followed to avoid prejudgment interest were we to adopt Togova's reasoning. Since the hypothetical gross rent was the only "certain" figure in Togova's claim, the payment of any other amount would have been a mere guess due to the many unknown additions and deductions involved in the calculation.

monthly depending on the various expenditures Togova was compelled or chose to make during that period. The fact it is possible to determine with some certainty one figure which is but a single *element* in the mathematical calculations involved in deriving a claim does not necessarily render the claim itself either certain or calculable. Therefore, we decline to apply the rule in *Hansen* v. *Covell, supra,* 218 Cal. 622 which allows prejudgment interest where the original liquidated sum is subject to reduction by an unliquidated counterclaim. (See also, ante., p. 907, *supra.*)

## Conclusion

Civil Code 3287, subdivision (a) awards prejudgment interest to every person entitled to receive damages which are certain or "capable of being made certain by calculation" if the right to receive the damages vested on a specific day. To implement this statute, California courts have broadly construed a sum certain or liquidated debt to provide just compensation to the injured party for loss of money during the prejudgment period. Additionally, California courts have long protected the injured party's entitlement to legal interest by not allowing unliquidated counterclaims to change the character of the liquidated debt and thus defeat the prejudgment award. We support this policy of just compensation but conclude it is not applicable in a cross-action for an accounting on a lease where there are other indicia that the sum was not capable of calculation within the meaning of section 3287, subdivision (a) and where there is no basis in equity for granting the award. We conclude under the facts of this case that the creditor should not be allowed to cross-claim for an accounting to determine the amount due and then charge the debtor who had no knowledge of the sum due with prejudgment interest on that same adjudicated sum. Therefore we hold that the award of $16,376.13 in prejudgment interest was in error.

## Disposition

The judgment insofar as it awarded prejudgment interest to respondent is reversed and the cause is remanded for further proceedings consistent with this opinion.

Schauer, P. J., and Thompson, J., concurred.