Filed 4/22/21

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| CARLOS YANEZ, | ) | No. BV 033326 |
| | ) | |
| Plaintiff and Appellant, | ) | Central Trial Court |
| | ) | |
| v. | ) | No. 19STUD09747 |
| | ) | |
| OMAR VASQUEZ, | ) | |
| | ) | |
| Defendant and Respondent. | ) | **OPINION** |
| | ) | |

Appeal from a judgment of the Superior Court of Los Angeles County, Central Trial Court, Fernando L. Aenlle-Rocha, Judge.  Affirmed.

Anderson & Associates, Michael D. Anderson, and Andrei V. Serpik, for Plaintiff and Appellant.

Alston & Bird and Gregory S. Berlin; Inner City Law Center and Kaimipono Wenger, for Defendant and Respondent.

Plaintiff and appellant Carlos Yanez appeals the unlawful detainer (UD) judgment entered in favor of defendant and respondent Omar Vasquez.  The judgment was a consequence of a successful motion for summary judgment filed by defendant.

Plaintiff argues for reversal of the order granting summary judgment on procedural grounds as well as on the merits.  He contends the trial court erred by considering the motion because defendant failed to give the notice required under Code of Civil Procedure sections 1170.7 and 1013, subdivision (c).[1]  Substantively, plaintiff maintains the trial court incorrectly found (a) his failure to obtain a certificate of occupancy for the premises was a complete affirmative defense under Chapter XV of the Los Angeles Municipal Code—the Los Angeles Rent Stabilization Ordinance (LARSO) (L.A. Mun. Code (LAMC) § 151.00 et seq.), and (b) plaintiff could not prevail on his unlawful detainer action because the occupancy was illegal and the underlying lease agreement was therefore void.

Although the notice period fell short by one day, plaintiff waived the issue and appellate relief on that basis is unwarranted due to the dearth of any resulting prejudice to plaintiff.  On the merits, the absence of a certificate of occupancy (due to an illegally converted garage) rendered the lease agreement void and, for that reason, an unlawful detainer action could not be based on defendant's failure to comply with its provisions.   We affirm the judgment.

## BACKGROUND

On October 4, 2019,[2] plaintiff filed a complaint for possession of a premises located on 42nd Street in the City of Los Angeles.  The complaint alleged the parties entered into an oral agreement in February 2007 for a month-to-month tenancy in exchange for a rental payment of $1,000 per month, and that the tenancy was subject to LARSO.  The lawsuit was triggered by defendant's failure to comply with a three-day notice to perform covenants or quit.  As stated in the notice, defendant allegedly made unlawful modifications to the premises and refused to

---

[1]All unspecified statutory references are to the Code of Civil Procedure.

[2]All unspecified dates are to the year 2019.

2

allow "pest control, and handymen reasonable access for the purpose of making repairs and/or improvements."

On October 15, defendant filed a written answer generally denying each allegation in the complaint and asserting various affirmative defenses, including that plaintiff's demand for possession violated LARSO. Among the cited violations of LARSO were that the premises were not registered with the City of Los Angeles as required by LAMC section 151.05, and that plaintiff "did not post and/or serve on tenant the Certificate of Registration as required by LAMC [section] 151.05(A)."

### *Motion for Summary Judgment*

Defendant filed a motion for summary judgment, asserting as undisputed material facts that the subject premises was an illegal residential unit subject to LARSO, and that plaintiff failed to register the unit. In relevant part, defendant argued plaintiff's failure to register the unit rendered the occupancy unlawful and the underlying lease agreement an illegal contract. He alleged the violation of LARSO, i.e., the lack of registration, served as a complete affirmative defense to the action.

In support of his motion, defendant filed declarations from himself and his attorney. Attached as exhibits to the latter were the following.

- A Notice and Order to Comply from Los Angeles Housing and Community Investment Department (HCIDLA), dated May 23. The document indicated plaintiff's unit was in violation of specific sections of the LAMC, ordered plaintiff to eliminate the identified violations no later than June 29, and advised plaintiff that an inspection of the premises would be conducted on July 2.

- A July 3 complaint submitted by defendant and a co-tenant to the HCIDLA. It alleged plaintiff attempted to illegally evict the tenants and did not tender relocation assistance fees.

- An inspection notice from the HCIDLA, dated July 15, indicating the premises would be re-inspected on October 2 to verify compliance with applicable codes and regulations, and noting in particular the violation of LAMC section 161.902 identified during the

July 2 inspection—i.e., "UNAPPROVED CONSTRUCTION TO CREATE DWELLING UNIT THAT INCLUDES KITCHEN AND BATHROOM."

- A July 16 letter from the HCIDLA, upon review of the July 3 tenant complaint, advising plaintiff of the procedure under LARSO for eviction of a tenant in order to comply with a government order (including payment of relocation benefits).

- A Notice of General Manager's Hearing and Notice of Acceptance into the Rent Escrow Account Program (REAP)[3] from the HCIDLA, dated October 31, pertaining to the 42nd Street premises.

In his opposition, plaintiff argued defendant's motion was not timely served and, as a result, plaintiff was not provided with the required notice of five days plus two court days (§§ 1170.7, 1013, subd. (c)) for the summary judgment hearing. On the merits, plaintiff maintained his UD action was valid under LAMC section 151.09(A)(2), (3), and (6), which states three of the permitted grounds for eviction under LARSO—the failure to cure a violation of a lawful obligation or covenant of the tenancy, nuisance, and refusal to provide the landlord with reasonable access to the unit.

Plaintiff claimed the lawsuit did not constitute an attempt to enforce an illegal contract because he was not demanding rent and no cause of action alleged defendant failed to pay rent. He took the position that he was not obligated to pay defendant relocation benefits because the basis for the eviction (defendant's unlawful modifications to the unit and refusal of access to it for repairs) is not one of the grounds specified in LAMC section 151.09(G) as requiring the payment of such fees.

### The Trial Court's Ruling

The trial court's December 10 decision is documented in a two-page minute order; we have not been provided with a record of the oral proceedings. The court found there were no triable issues of material fact and identified the following as undisputed: (1) the unit was

---

[3]"REAP (L.A. Mun. Code §§ 162.00–162.12) was created to provide a method to enforce the Housing Code and to encourage compliance from landlords with regard to maintenance and repair of buildings. (L.A. Mun. Code, § 162.01.)" (*Intelligent Investments Corp. v. Gonzales* (2016) 1 Cal.App.5th Supp. 1, 3, fn. 2.)

subject to LARSO; (2) the unit consisted of "an illegally converted garage with a kitchen and bathroom"; (3) the HCIDLA "inspected the property and declared it to be an unapproved unit constructed without the requisite building permit(s) and certificates of occupancy or completion"; and (4) no valid rental unit registration certificate was issued by the HCIDLA.

The court determined plaintiff's "undisputed failure to secure and serve the necessary registration certificate constitute[d] a violation of LARSO and provide[d] [d]efendant with an affirmative defense to the unlawful detainer action." Citing *Salazar v. Maradeaga* (1992) 10 Cal.App.4th Supp. 1, the court concluded plaintiff could not bring an action premised on a three-day notice to perform covenants or quit because the underlying lease that formed the basis of his action was void. Judgment in defendant's favor was entered that same day.

## DISCUSSION

### *Notice of Summary Judgment*

In an unlawful detainer case, "[a] motion for summary judgment may be made at any time after the answer is filed upon giving five days notice." (§ 1170.7.) The period is extended, however, where notice is served by a method other than personal service, e.g., by five calendar days for service by mail within the State of California. (§ 1013, subd. (a).) In the case of service "by Express Mail or other method of delivery providing for overnight delivery [, the notice period is] . . . extended by two court days." (§ 1013, subd. (c).)

"[T]rial courts do not have authority to shorten the minimum notice period for summary judgment hearings." (*McMahon v. Superior Court* (2003) 106 Cal.App.4th 112, 118.) Because "[s]ummary judgment, although a very useful tool in litigation, is also a drastic remedy . . . , it is important that all of the procedural requirements for the granting of such a motion be satisfied before the trial court grants the remedy." (*Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1256.)

The proof of service attached to defendant's summary judgment motion shows the motion was served by overnight mail on December 4. The notice of motion indicates the hearing was on calendar six days later—December 10. The notice was inadequate because the last day the motion could have been served by overnight mail, given the date of the hearing,

5

was December 3.[4]  Nonetheless, "[n]o judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13.)

"[T]he 'general rule is that one who has been notified to attend a certain proceeding and does do so, cannot be heard to complain of alleged insufficiency of the notice; it has in such instance served its purpose.'  [Citation.]"  (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 (*Carlton*).)  If counsel believes he or she has been prejudiced by inadequate notice, counsel "should file the best opposition possible under the circumstances[,] . . . includ[ing] counsel's position on the defective-service/inadequate-notice issue, as well as the merits.  . . .  Counsel should then appear at the hearing, object to the hearing taking place because the service was defective and/or inadequate notice of the hearing was received; again explain to the court the prejudice that has been suffered by reason of the defective service and/or inadequate notice; and request a continuance of the hearing so that a proper response to the motion may be filed. . . . [I]f the court denies a continuance, counsel should be prepared to argue the motion on the merits.  If, however, the steps described in this paragraph are taken, the record will be well preserved for any future writ proceeding or appeal."  (*Id*. at p. 698.)

In *Carlton*, defendant Quint provided inadequate notice of the hearing on his summary judgment motion and Carlton, despite raising the issue in his opposition and at the hearing, "never claimed he did not have adequate time to prepare a response, appeared at the hearing, argued the merits, never requested a continuance, and never claimed he was prejudiced by the defective service or inadequate notice of hearing."  (*Carlton*, *supra*, 77 Cal.App.4th at p. 698.)  *Carlton* held the plaintiff "waived any alleged defective service or inadequate notice."  (*Ibid*.)  We take the same approach with one variation.

---

[4]Section 12c provides: "(a) Where any law requires an act to be performed no later than a specified number of days before a hearing date, the last day to perform that act shall be determined by counting backward from the hearing date, excluding the day of the hearing . . . [;] (b) Any additional days added to the specified number of days because of a particular method of service shall be computed by counting backward from the day determined in accordance with subdivision (a)."

The case before us presents a double-waiver. First, the *Carlton* waiver. It is true that plaintiff raised the issue of inadequate notice in his opposition. But he did not claim to have suffered any prejudice in drafting his response or in preparing for the hearing, nor does the record reflect he requested a continuance. Similarly, on appeal, plaintiff does not argue he was prejudiced by a notice that was improperly shortened by just one day. As in *Carlton*, the argument that inadequate notice precluded litigation of the summary judgment motion is waived.[5]

Second, we have no record of the trial court ruling on this issue. It is not addressed in the minute order and, given the record of the oral proceedings is absent, nothing suggests plaintiff pressed the court for a ruling. It is entirely possible plaintiff abandoned the argument altogether. The failure to obtain a ruling is an independent waiver of the appellate claim. (*People v. Braxton* (2004) 34 Cal.4th 798, 813; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1; *People v. Obie* (1974) 41 Cal.App.3d 744, 750, disapproved on another ground in *People v. Rollo* (1977) 20 Cal.3d 109, 120, fn. 4.)

**Hearing on Summary Judgment**

*Standard of Review*

"On appeal after a summary judgment has been granted, we review de novo the trial court's decision to grant summary judgment and are not bound by the trial court's stated reasons. [Citations.] In reviewing the summary judgment, we apply the same three-step analysis used by the trial court: we (1) identify the issues framed by the pleadings; (2) determine whether the moving party has negated the opponent's claims; and (3) determine whether the opposition has demonstrated the existence of a triable, material factual issue. [Citation.] Like the trial court, we view the evidence in the light most favorable to the

---

[5]In his reply brief, plaintiff argues he is not required to establish the improper notice resulted in a miscarriage of justice, citing *Dvorin v. Appellate Dep't of Superior Court* (1975) 15 Cal.3d 648, 651. His position is not persuasive. *Dvorin* held it was improper for an appellate court to order a trial court to enter summary judgment for a party where that party had never filed a motion for summary judgment. (*Id*. at pp. 650-651.) *Dvorin* does not square with the facts of this case.

7

opposing party and accept all inferences reasonably drawn therefrom. [Citation.]" (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.)

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 849.)

*Unlawful Detainer & LARSO*

Section 1161, subdivision (3), provides a tenant is "guilty of unlawful detainer" when he or she (a) fails to comply with a condition or covenant of the lease agreement (other than the required rental payment), (b) is served with a written notice requiring the tenant, within three days, to either perform such condition/covenant or surrender the property to the landlord, (c) refuses to perform the condition or covenant identified in the three-day notice, and (d) after the expiration of the three-day period, continues in possession of the leased premises without the permission of the landlord.

If the rented property (like the one in this case) is governed by LARSO, "[a] landlord may bring an action to recover possession of a rental unit only upon" one of the LARSO's enumerated grounds. (LAMC § 151.09(A).) Plaintiff relies on two of those grounds to justify his action: the tenant is "committing or permitting to exist a nuisance in or is causing damage to, the rental unit . . . ." (LAMC § 151.09(A)(3)); and the tenant "has refused the landlord reasonable access to the unit for the purpose of making repairs or improvements, . . " (LAMC § 151.09(A)(6)).[6] But, LAMC section 151.09(A) does not provide an independent statutory basis for an eviction proceeding; rather, it limits the substantive grounds upon which a landlord

---

[6]Plaintiff does not argue, as he did in the trial court, that the eviction was permissible pursuant to LAMC section 151.09(A)(2)—i.e., "[t]he tenant has violated a lawful obligation or covenant of the tenancy and has failed to cure the violation after having received written notice from the landlord, . . ."

may bring an action to repossess a rent-controlled unit in Los Angeles. (See, e.g., *Birkenfeld v. Berkeley* (1976) 17 Cal.3d 129, 148.)

The three-day notice underlying plaintiff's action is titled "3 DAY NOTICE TO PERFORM COVENANT OF MONTH TO MONTH TENANCY OR QUIT." As such, the action was based on section 1161, subdivision (3), which provides for the eviction of a tenant who continues in possession "after a neglect or failure to perform other conditions or covenants *of the lease or agreement under which the property is held*" (italics added),[7] and permitted under LAMC section 151.09(A)(2), which allows for the recovery of possession of a rental unit where the tenant "has violated a lawful obligation or covenant *of the tenancy . . .*" (italics added). Plaintiff's lawsuit is premised on the violation of one or more terms of the underlying agreement and the tenancy created thereby.

*The Affirmative Defense*

A tenant may allege an affirmative defense based on the landlord's violation of "any" LARSO provision (LAMC § 151.09(E)) including the requirement that, before accepting any rent, the landlord secure a written registration statement (or applicable registration renewal) from the HCIDLA and either serve it on the tenant or properly post it on the premises.

---

[7]The three-day notice is four pages long. A line in the middle of page three indicates the notice is being "made in accordance with" section 1161, subdivision (4). This isolated citation to subdivision (4) appears to be a typographical error as that provision allows for the termination of the lease agreement and the right to evict when the tenant has "commit[ed] waste upon the demised premises" or permitted "the maintenance or commission of a nuisance." (§ 1161, subd. (4).) Under those circumstances, the landlord is "entitled to restitution of possession of the demised premises" upon three days' *notice to quit*. (*Ibid*.) Plaintiff's three-day notice makes repeated demands for defendant to either perform the covenants in the lease or surrender the premises to the landlord, i.e., the remedy provided for in subdivision (3). Plaintiff does not claim the action was brought pursuant to subdivision (4) and, in fact, the complaint alleges defendant was served with a "3-day notice to *perform covenants* or quit." (Italics added.)

(LAMC § 151.09(A) & (F).)[8]  It is this affirmative defense that is asserted by defendant.[9]

Plaintiff acknowledges LAMC section 151.05(A) prohibits "demand[ing] or accept[ing] rent for a rental unit without first procuring and serving on the tenant or displaying in a conspicuous place a valid written registration statement."  But he maintains the provision is inapplicable because plaintiff neither demanded back rent in his UD action nor based the action on a failure to pay rent.  We are not persuaded by plaintiff's argument.

Regardless of whether the instant action was based on nonpayment of rent or demanded back rent, and regardless of whether defendant had or had not paid rent in months, the tenancy at issue was the product of an oral lease between the parties pursuant to which defendant agreed to pay rent to plaintiff on the first of each month in exchange for possession of the premises. Plaintiff was thus required to obtain a registration statement and serve it on defendant or

---

[8]LAMC section 151.05(A) provides: "On or after July[] 1979, no landlord shall demand or accept rent for a rental unit without first procuring and serving on the tenant or displaying in a conspicuous place a valid written registration statement from the [HCIDLA] or its designee.  On or after April 30, 1983, no landlord shall demand or accept rent for a rental unit without first serving a copy of a valid registration or annual registration renewal statement on the tenant of that rental unit."  LAMC section 151.09(F) specifies that the failure to comply with this provision is an affirmative defense to a UD action.

[9]Plaintiff claims defendant did not argue in his summary judgment motion that plaintiff's UD action failed as a matter of law for want of compliance with the LARSO requirement to secure and serve on tenants a valid registration statement (LAMC § 151.05(A)) and that the issue was therefore not properly before the trial court.  In fact, defendant did make this argument in his motion; he simply did not identify the particular LAMC section involved.  Plaintiff cites no authority for the proposition that defendant's argument is not properly preserved for appeal.  (Cal. Rules of Court, rule 8.883(a)(1)(A); *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867 ["an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived"].)

display it in a conspicuous place.  His failure to do so was a complete defense under LARSO.[10] (See LAMC § 151.09(E) & (F).)

Plaintiff offers an alternative argument.  This approach accepts that the original lease was void due to the absence of a registration statement but argues the lease that the complaint alleges defendant breached is not the original oral agreement but rather a subsequently modified lease which did not demand rent.  Plaintiff points out he served defendant with a 60-day notice to quit on May 1 and, after the period expired, plaintiff allowed defendant to remain in the residence without paying rent for approximately three months until commencement of the UD proceedings.  He claims, by permitting defendant to live rent-free for that period of time, the parties effectively modified the original terms of the lease to create a new and valid rent-free agreement.  Thus, viewed through this lens, he did not violate LAMC § 151.05(A) because (1) his UD action did not allege the breach of a lease that required the payment of rent, and (2) he did not accept rent after the lease was amended.[11]

There are three problems with plaintiff's argument.  First, it is forfeited because plaintiff did not argue in the trial court that the lease was revised.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Vallejo Police Officers Assn. v. City of Vallejo* (2017) 15 Cal.App.5th 601, 621.)  Second, defendant points to nothing in the record to support his position that rent was not demanded during the period of time he specifies.  A reviewing court may not consider assertions of fact in a party's brief that are not supported by the record (*Myers v. Philip Morris*

---

[10]Plaintiff's argument that the trial court's interpretation of LAMC section 151.05(A) included "past violations [and] would provide tenants with an ability to permanently occupy a rental property due to a single violation of the[] municipal code" is not well taken.  Again, it was not simply a past demand for, or acceptance of, rent for a unit for which there was no valid registration statement that was found to have violated this section; rather, it was the underlying oral agreement for possession of the unit in exchange for the payment of rent to plaintiff that was problematic.

As explained *post*, HCIDLA advised plaintiff of the proper procedure to evict a tenant when the occupied property must be repaired in order to comply with a government order.  Plaintiff was not permanently dispossessed of the property, and his position that the trial court's ruling effectuated a "permanent physical invasion of property" and a "compensable taking," or that defendant has been "unjustly enriched," is without merit.

[11]Rehearing was granted to allow the parties to brief this issue.

*Companies, Inc*. (2002) 28 Cal.4th 828, 845, fn. 6) and, in this regard, it is the burden of the appealing party to support factual assertions with citation to the record (Cal. Rules of Court, 8.883(a)(1)(B); *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 284).

Third, the record does not demonstrate the parties modified the original agreement.  By remaining on the property after the expiration of the 60-day notice, defendant became a holdover tenant.  (*Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820.)  The new tenancy is presumed to continue under the same essential terms[12] as the former agreement unless a new agreement is reached.  (*Smyth v. Berman*, *supra*, 31 Cal.App.5th at p. 192; *The City v. Hart* (1985) 175 Cal.App.3d 92, 94-95 [Civil Code section 1945 "states the widely held rule that a landlord who consents to his tenant's holding over after the expiration of the lease without making a new agreement is bound by the terms of the original lease"]; (*Miller v. Stults* (1956) 143 Cal.App.2d 592, 598 [unless there is a modification to the lease, the presumption that it continued on the same terms after expiration governs].)

The presumption that the terms of the lease agreement never changed was reinforced by plaintiff's own complaint.  Plaintiff used Judicial Council form UD-100 to draft his complaint. On the form, he alleged, in sections 6(a) and 6(b) that, in February 2007, the parties entered into an oral agreement requiring defendant to pay $1,000 to plaintiff on a month-to month basis.  Next to a check box for section 6(d) is the corresponding preprinted language "The agreement was later changed as follows (*specify*):" followed by a space in which to describe the modification.  Plaintiff did not check box 6(d) nor did he include any language regarding a change to the agreement.  We reject plaintiff's claim that a new rent-free lease was the agreement he alleged was breached.

---

[12]The amount of rent paid is considered to be an "essential" term.  (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 192, quoting *Shenson v. Shenson* (1954) 124 Cal.App.2d 747, 753.)

*Illegal Contract*

Plaintiff argues the trial court erred by ruling he could not recover possession of the premises due to the illegality of the lease. This is not, in fact, what the trial court ruled. Rather, the court found the unit consisted of "an illegally converted garage with kitchen and bathroom," constructed without the requisite permits and certificates of occupancy or completion (as declared by the HCIDLA following the July 2 inspection), and that no valid registration certificate had been issued. The trial court ruled, because the occupancy was illegal, the underlying lease agreement was also void and unenforceable by either party, and plaintiff therefore could not bring a UD action based on a three-day notice to perform covenants or quit. (See *Salazar v. Maradeaga*, *supra*, 10 Cal.App.4th at p. Supp. 4 ["Where . . . an occupancy violates a zoning or building code enacted for the benefit of the general public, the use itself is illegal, and the defect is thus uncorrectable, the lease agreement is held to be void and unenforceable by either party"]; see also *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1372, fn. 3, quoting *Gruzen v. Henry* (1978) 84 Cal.App.3d 515, 518 ["'contracts entered into in violation of [a] statute or ordinance are void . . . whether the act is *malum in se* or merely *malum prohibitum*'"].)

Plaintiff's concern that the trial court's decision permanently deprives him of possession of the property is not legitimate. The HCIDLA advised plaintiff, in its July 16 letter, of LARSO's procedure for eviction of a tenant in order to comply with a government order per LAMC section 151.09(A)(11).[13] Plaintiff was informed that, under these circumstances, the landlord must: (1) "file with the HCIDLA a Declaration of Intent to Evict in Order to Comply with a Government Agency's Order"; (2) "serve the tenant with a 30 or 60 day written notice of eviction attached to a copy of the Declaration of Intent to Evict"; and (3) "either pay relocation

---

[13]An eviction is not barred by LARSO if "[t]he landlord seeks in good faith to recover possession of the rental unit in order to comply with a governmental agency's order to vacate, order to comply, order to abate, or any other order that necessitates the vacating of the building housing the rental unit as a result of a violation of the Los Angeles Municipal Code or any other provision of law." (LAMC § 151.09(A)(11).)

benefits directly to the tenant or deposit said benefits into an escrow account . . . ." Thus, plaintiff had at least one legitimate means to effectuate an eviction.

## DISPOSITION

The summary judgment entered in defendant's favor is affirmed. Defendant is to recover his costs on appeal.

_____
Kumar, Acting P. J.

We concur:

_____          _____
Ricciardulli, J.                                      Murillo, J.*

* Judge of the Los Angeles Superior Court sitting temporarily under assignment by the Chief Justice.

14