Vincent J. BARATTA, et al., Plaintiffs,

v.

S.D. COHN & CO., et al.   Defendants.

No. 81 Civ. 0004.

United States District Court,
S.D. New York.

Feb. 11, 1985.

On Motion For Reconsideration
June 6, 1985.

Lunney & Crocco, New York City, for plaintiffs.

Graubard Moskovitz McGoldrick Dannett & Horowitz, New York City, for defend-

**2**

ants S.D. Cohn & Co., Santangelo, Longinotti & Lally.

Willke Farr & Gallagher, New York City, for defendants Cowen & Co. and Stuart Levine.

Debevoise & Liberman, New York City, for defendants Sidney Cohn, Santangelo and H.C. Longinotti.

## OPINION

GRIESA, District Judge.

This opinion deals with the amount to be awarded to defendant Cowen & Company on its cross-claim against defendant S.D. Cohn & Co. For the reasons set forth hereafter, it is determined that Cowen should recover $15,000 paid in settlement to plaintiffs, as well as $207,000 attorney's fees and $34,827 disbursements.

The extensive prior proceedings will be briefly summarized. Plaintiffs sued Cohn and Cowen and certain individuals, including one John T. Zukas, claiming that defendants' wrongdoing resulted in securities trading losses of about $350,000. Plaintiffs sued under the federal securities laws and under state law theories. Various cross-claims were made among the defendants.

The controversy arose because of the fact that plaintiff Vincent Baratta was involved in securities trading with Zukas, and Baratta and Zukas arranged for Zukas to be employed at the Cohn office in order to facilitate Baratta's trading and minimize commissions. Cowen acted as clearing broker for Cohn. The trading carried out by Zukas at Cohn resulted in substantial losses to Baratta and to his son, the other plaintiff.

Certain issues in the case were tried to a jury and certain issues were reserved by agreement for the court. The trial was held from February 6 to March 2, 1984.

Prior to the commencement of trial, Cowen settled with plaintiffs for $15,000. The case went to trial on plaintiffs' claims against Zukas, S.D. Cohn & Co. and certain individuals associated with Cohn. The jury could not agree on whether Zukas had defrauded plaintiffs, and the issue of Zukas' liability remains open. As to the Cohn defendants, the combined effect of the jury's answers to questions and the rulings of the court was to exonerate these defendants. *See* transcript of March 15, 1984 pp. 144–179.

Proceedings and submission of papers pertaining to Cowen's cross-claim extended into December 1984.[1] Although there has never been any serious challenge to Cowen's claim for the $15,000 settlement payment, Cowen's claim for attorney's fees has been hotly contested both as to basic liability and amount.

The legal services performed by Cowen's attorneys occurred during three time periods: 1) From the commencement of the action in 1981 through December 30, 1983, when plaintiffs settled with Cowen; 2) from January 1, 1984 until the end of the trial on March 2, 1984; and 3) from the end of the trial until July 19, 1984.[2] The total amount claimed by Cowen for attorney's fees is $348,463, and for disbursements $53,283. Cowen also claims prejudgment interest.

Cohn contends that there should be no recovery whatever of amounts related to the second and third periods. As to the first period, Cohn argues that the amount claimed is excessive.

The basis for the claim of Cowen for attorney's fees and disbursements is Paragraph Fourteenth of the Clearing Agreement, which provides:

FOURTEENTH: Errors, misunderstandings or controversies, except those specifically otherwise covered in this Agreement, between customers of Introducing Broker and Introducing Broker or its employees, which shall arise out of the acts

---

1. In the recent papers Cohn requests that the record be completed by the admission of Exhibit 113 and the deposition of Stuart Levine. This request is granted.

2. Although Cowen's attorneys performed services after July 19, 1984, Cowen is not seeking to recover against Cohn for such services. The significance of the July 19 date will be discussed hereafter.

or omissions of Introducing Broker or its employees, shall be the responsibility and liability of Introducing Broker and are to be adjusted accordingly. If such error, misunderstanding or controversy shall result in the bringing of an action or proceedings against Cowen, we will notify Introducing Broker, and if Cowen so requires, Introducing Broker agrees at its own cost and expense to defend any action or proceeding brought against Cowen by reason thereof, or Cowen may defend such action or proceeding, but in either event Introducing Broker shall indemnify and hold Cowen harmless from any loss, liability, damage and expense, including attorneys' fees, which Cowen may incur or sustain in connection therewith or under any settlement thereof and Introducing Broker shall satisfy of record any final judgment or judgments rendered against Cowen in such action or proceeding.

Cohn was the "Introducing Broker" referred to in this paragraph. As applied to the present case, the paragraph provides that a controversy between Cohn and its customers, which arises out of acts of Cohn or its employees, shall be the responsibility and liability of Cohn. If such controversy shall result in the bringing of an action against Cowen, Cohn shall indemnify Cowen against any loss or expense, including attorney's fees, which Cowen may incur or sustain in connection therewith or under any settlement thereof.

■ The attorney's fees sought to be recovered by Cowen fall into two categories—(1) fees expended to defend a suit against Cowen, and (2) fees expended on the cross-claim by Cowen against Cohn to recover fees in category (1). On July 19, 1984 I ruled that Paragraph Fourteenth of the Clearing Agreement permitted Cowen to recover fees in category (1) subject to further submissions regarding the amount. In the further submissions the issue about category (2) was given additional discussion, and is now being decided in the present opinion.

Both sides have cited case authority on the question, although they both agree that the issue rests upon the interpretation of Paragraph Fourteenth of the Clearing Agreement. As already discussed, that paragraph provides that, if a controversy between Cohn and a customer "shall result in the bringing of an action or proceedings against Cowen, ... [Cohn] shall indemnify and hold Cowen harmless from any ... expense, including attorneys' fees, which Cowen may incur or sustain in connection therewith...."

Cohn argues that the phrase "in connection therewith" refers back to the language about "an action or proceedings *against* Cowen" (emphasis added). Cohn contends there is no coverage of proceedings *by* Cowen against Cohn to recover on an indemnity claim. Cowen, on the other hand, argues that the language of Paragraph Fourteenth is broad enough to include proceedings by Cowen to recover indemnity.

New York law applies. The only New York case closely in point is *Swiss Credit Bank v. International Bank, Ltd.*, 23 Misc.2d 572, 200 N.Y.S.2d 828 (Sup.Ct., N.Y.Co. 1960) In that case there was an agreement between two banks in regard to certain letters of credit. The defendant agreed to indemnify the plaintiff against all expenses incurred by the plaintiff "in connection with said credits." Justice Steuer held that, although this provision allowed the plaintiff to recover legal expenses incurred in certain litigation with third parties, it could not recover the legal expenses of suing to collect these expenses. The judge stated (200 N.Y.S.2d at pp. 830–831):

A general agreement for the payment of counsel fees does not generally include counsel fees in the suit to collect those fees (*Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 154 N.Y.S.2d 10 [136 N.E.2d 484]). Of course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement.[3]

3. The *Doyle* case, cited in the quotation, involved a liability insurance policy. The policy

provided that the insurer would defend suits against the insured. It is well settled in New

If we turn to Paragraph Fourteenth in the present case, this paragraph would appear to allow recovery of attorney's fees only where they are incurred or sustained in connection with an action or proceeding against Cowen. There is no specific language providing for recovery of attorney's fees incurred by Cowen in suing Cohn to collect fees.

Assuming that *Swiss Credit Bank* can be taken to represent New York law, this would mean that under New York law indemnity contracts for attorney's fees are not liberally construed in favor of recovery. Arguably the contract in *Swiss Credit Bank* was broader than the one in the present case. It provided for indemnity for expenses incurred "in connection with said credits." It did not by its terms limit the indemnity to any particular kind of action or proceeding as does Paragraph Fourteenth. Yet the court in *Swiss Credit Bank* refused to allow recovery of fees incurred in a suit to collect fees.

Cowen relies upon *Dillingham Shipyard v. Associated Insulation Co.,* 649 F.2d 1322 (9th Cir.1981), where the court allowed recovery of attorney's fees incurred in suing on an indemnity claim. However, the contract there was far broader than the language involved in the present case. Cowen also relies upon *Schroeder v. C.F. Braun & Co.,* 502 F.2d 235 (7th Cir.1974), another case allowing recovery of legal expenses incurred in pursuing an indemnity claim. This case is of interest, since the contractual language was of the same type as in *Swiss Credit Bank.* The Seventh Circuit took a more liberal view in interpreting the contractual language than was taken by the New York court in *Swiss Credit Bank.* Of course, the New York view is controlling in our case. In any event, the contractual language in *Schroeder,* like that in *Swiss Credit Bank,* was broader than the contractual language in the present case.

I conclude that Cowen cannot recover legal expenses incurred in pursuing its indemnity claim against Cohn.

This brings us to the question of how much of the fees claimed by Cowen relate to this indemnity claim. As to work performed prior to Cowen's settlement with plaintiffs on December 30, 1983, the great bulk of this work related to defending against plaintiffs' claims. However, a small amount of time was spent on the indemnity claim against Cohn. Cohn argues that about $16,000 worth of services performed before December 30, 1983 should be disallowed on the ground that the time records either were for work on the indemnity claim or were for work on the indemnity claim and other matters without precise delineation. I find that the amount relating to the indemnity claim can be more closely estimated as $8,000. This amount is disallowed. Further questions about the claim for legal expenses incurred prior to December 30, 1983 will be discussed hereafter.

Following Cowen's settlement with plaintiffs, Cowen did not of course have any need for legal services to defend against plaintiffs' claims. Also, it was clearly understood that the Cohn defendants would not be seeking recovery against Cowen on any cross-claims. Thus, following the settlement with plaintiffs, Cowen had no need of legal services to defend against any claims whatsoever. The only thing left in the case for Cowen was its cross-claim for indemnity against Cohn.

Following the December 30, 1983 settlement between Cowen and plaintiffs, Cowen's attorneys continued to participate in the remaining pretrial proceedings, and also participated in the trial of the action. The primary purpose for this was the pursuit of the indemnity claim against Cowen. Shortly after the trial commenced, it was agreed that the indemnity claim would be decided by the court without the jury. However, Cowen's attorneys were allowed

---

York that such a policy implies that the insurer will indemnify the insured for counsel fees in the event that the insurer improperly fails to defend an action. The court in *Doyle* awarded

legal fees expended in defense of an action against the insured, but denied fees incurred in suing the insurer for these expenses.

to continue their participation in the trial because the evidence developed at the trial might bear upon the indemnity claim.

In the submissions recently made to the court, Cowen asserts that, aside from pursuing its indemnity claim, it participated in the trial to protect its reputation and to avoid unfavorable developments which could affect Cowen with regulatory agencies and in related litigation.

As already stated, it is my view that Paragraph Fourteenth does not allow Cowen to recover legal expenses incurred in pursuing the indemnity claim. Also, it is quite clear that Paragraph Fourteenth does not cover the other stated purposes for participation in the trial, such as protection of reputation.

The portion of Cowen's legal expense claim relating to the period from January 1, 1984 until the end of the trial on March 2, 1984 is $80,252 attorney's fees and $12,692 disbursements. These amounts are disallowed.

With regard to Cowen's legal expenses for the period following the trial, these related entirely to the indemnity claim against Cohn, except for a small amount of work in observing the final proceedings in respect to plaintiffs' claims against the Cohn defendants. In any event, Cowen can recover no part of its claim for legal expenses which relate to activities following the trial. The amounts involved are $50,228 in attorney's fees and $5,763 in disbursements. These amounts are disallowed.

The bulk of Cowen's claim for legal expenses relates to the three-year period from the commencement of the suit on January 2, 1981 until the settlement of December 30, 1983. The amounts claimed are $217,983 in fees and $34,827 in disbursements. I have already disallowed fees in the amount of $8,000 for work related to the indemnity claim. However, Cohn raises a number of other questions about these amounts. Cohn vigorously attacks their reasonableness and urges that only a relatively small proportion should be allowed. Cohn asserts that the firm retained by Cowen overstaffed the case, that

excessive fees were run up by Cowen out of malice toward Cohn, that the amounts allegedly billed by Cowen's law firm were not in fact paid but were discounted, and that in some instances the time records are in error or have been improperly redacted. Cohn asserts that the amounts claimed by Cowen are out of all proportion to what would be expected in defending a "$400,000 claim." Cohn asserts that the evidence presented is insufficient to deal with the issues and that there should be a full hearing with testimony and cross-examination.

Except for certain minor errors conceded by Cowen, I find that Cohn's arguments are entirely without merit. The time records of Cowen's attorneys show that the amount and nature of legal service were commensurate with the difficulty of the litigation. It is true that the liability to which Cowen was exposed on plaintiffs' claims was about $400,000 at the most and probably somewhat less. Legal expenses of over $200,000 in defending against such claims are substantial indeed. However, the action was heavily litigated during the three years preceding Cowen's settlement with plaintiffs. There was a great amount of discovery, much of which was initiated by Cohn. Cowen instructed its attorneys to defend the action vigorously, even though the expense was substantial. Cowen, as an investment firm, regarded the action most seriously because of the charges of fraud. Cowen cannot be criticized in any way for acting in this manner. There is nothing in Paragraph Fourteenth which required Cowen to take risks or make an incomplete defense of the lawsuit.

Cohn complains about the fact that, on occasion more than one attorney would attend a deposition or perform other work. Cohn also complains about the fact that, over a period of time, several successive associates worked on the matter, resulting in duplication of effort. Cohn's attack is unrealistic. The bulk of the work in the case was done by Philippe M. Salomon, who was on the case from beginning to end. At the outset he was an associate in his firm, Willkie Farr & Gallagher, and then became a partner. He staffed the case with assist-

ants in a manner appropriate to this kind of litigation. The assistants were generally given assignments which did not involve duplication. Of course, perfection is never achieved in this regard. But the hourly rates charged for junior personnel take into account factors of the kind noted by Cohn.

The allegation that Cowen maliciously generated excessive legal expenses to charge against Cohn is irresponsible. It is convincingly denied by Cowen, and the detailed record of legal services performed entirely supports this denial. With regard to the contention that Cowen's attorneys did not actually collect the amounts claimed, but made some undercover discount, this contention is also baseless.

Certain other detailed allegations of Cohn must be dealt with. Cohn charges that time sheets for $14,400, relating to the period before December 30, 1983, are not sufficiently descriptive. However, these time sheets clearly relate to the *Baratta* matter, and if the descriptions of work are imperfect, this is a very small matter in the overall picture. There is not the slightest reason to believe that the Willkie Farr personnel did not actually perform necessary work on the *Baratta* matter for the amounts of time recorded on those sheets. Cohn then complains that time sheets involving $28,877 in services were redacted, and that the originals should be produced to Cohn's attorneys or presented to the court for an *in camera* review. It appears that Cowen did in fact redact certain time sheets to remove references to privileged matters. However, even with the redactions, the evidence is sufficient to show that necessary work was devoted to the *Baratta* matter. There is no reason for prolonging this lengthy proceeding to have further litigation about redacted time sheets. Finally, Cohn complains about duplicate time sheets ($1,475) and time sheets allegedly related to other actions ($3,147). Cowen consents to the reduction of $1,475 and to a discount on the $3,147, which I fix at $1,500. These amounts $1,475 and $1,500 are disallowed.

I find that the hourly rates charged by the Willkie Farr attorneys are entirely rea-sonable. The amount of service and the rates for paralegals and Lexis are reasonable, as are the amounts for the disbursements.

In conclusion, I award Cowen attorney's fees for the period January 2, 1981 to December 30, 1983 in the amount of $207,000. This is the result of taking the $217,983 claimed and deducting the $8,000, $1,475 and $1,500 (total $10,975) described above. The full claim of $34,827 for disbursements for this period is allowed.

As stated earlier, the claim for $80,252 fees and $12,692 disbursements relating to the period January 1—March 2, 1984 is disallowed, as is the claim for $50,228 fees and $5,763 disbursements relating to the period March 3—July 19, 1984.

Cowen's claim for prejudgment interest is denied. The matter is discretionary. The reason for denying the claim is that the issues relating to Cowen's indemnity claim (except for the minor amount of the $15,000 settlement) were subject to genuine dispute. These issues were not fully resolved until the present opinion. Cohn should not be required to pay prejudgment interest.

Settle judgment in accordance with this opinion. So ordered.

ON MOTION FOR RECONSIDERATION

■ Defendant Cowen & Co. has moved for reconsideration of one of the rulings made in my opinion dated February 11, 1985. I declined at that time to award prejudgment interest on Cowen's indemnity claim. Cowen contends that it is entitled to such interest.

Cowen is correct. The indemnity claim is based on a contract and this claim, including the request for prejudgment interest, is governed by state law. *Mallis v. Bankers Trust Co.*, 717 F.2d 683 (2d Cir.1983).

New York C.P.L.R. § 5001 provides that interest shall be recovered upon a sum awarded for breach of a contract and the interest shall be computed from the earliest ascertainable date the cause of action existed. A successful plaintiff is entitled as of right to interest under this statute. The

matter is not discretionary. *Marx & Co. v. Diner's Club, Inc.,* 405 F.Supp. 1, 3 (S.D. N.Y. 1975), *aff'd in relevant part,* 550 F.2d 505 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

Cowen is entitled to prejudgment interest on both elements of its indemnity claim— the amount paid in settlement and attorney's fees. The interest should be calculated from the date when the settlement was paid and from the dates when Cowen paid the fees. Cowen has a precise calculation of the figures.

A judgment should be settled in accordance with the rulings of the court.

So ordered.