| | Name | Case Number |
|---|---|---|
| 34. | Murphy | C–99–20772–RMW |
| 35. | Rennock | C–99–20773–RMW |
| 36. | Mandel | C–99–20774–RMW |
| 37. | Brannon | C–99–20775–RMW |
| 38. | Krosser | C–99–20776–RMW |
| 39. | Gulbin | C–99–20777–RMW |
| 40. | UHL | C–99–20778–RMW |
| 41. | Grill | C–99–20779–RMW |
| 42. | Troll | C–99–20780–RMW |
| 43. | Liberatore | C–99–20781–RMW |
| 44. | Ingall | C–99–20782–RMW |
| 45. | Gale | C–99–20912–RMW |
| 46. | Reuter | C–99–20913–RMW |
| 47. | Rappaport | C–99–20914–RMW |
| 48. | Hanson | C–99–20915–RMW |
| 49. | Senvest Int'l | C–99–20968–RMW |
| 50. | Doherty | C–99–20969–RMW |
| 51. | Barab | C–99–21033–RMW |
| 52. | Patel | C–99–21043–RMW |
| 53. | Margolies | C–99–21063–RMW |

**FERRELLGAS, INC., Plaintiff,**

v.

**AMERICAN PREMIER UNDERWRITERS, INC., The Penn Central Corporation, et al., Defendants.**

**And Related Cross Action.**

**No. EDCV94–0060 RT(AJW).**

United States District Court,
C.D. California,
Eastern Division.

Dec. 20, 1999.

Bonnie M. Adair, John R. Fletcher, Fletcher White & Adair, Malibu, CA, R. Pete Smith, Brian J. Nicewanger, McDowell Rice Smith & Gaar, Kansas City, MO, for Ferrellgas Inc, plaintiff.

Douglas Carroll, Michael R. Sullivan, Sullivan Law Corp., Los Angeles, CA, Susan J. Mohler, Brown Todd & Heyburn, Lexington, KY, for American Premier Underwriters, plaintiff.

Thomas Holden, Morison–Knox Holden Melendez & Prough, Walnut Creek, CA, for Hartford Acc. & Indem. Co., defendant.

Martin D. Kaplan, Michael J. Larin, Eric Luedtke, Lynberg & Watkins, Los Angeles, CA, for Granite State Ins. Co., defendant.

## ORDER REGARDING CROSS–MOTIONS TO DETERMINE PRE-JUDGMENT INTEREST

WISTRICH, United States Magistrate Judge.

Before the Court are cross-motions filed by plaintiff Ferrellgas, Inc. ("Ferrellgas"), defendant and cross-claimant American Premier Underwriters, Inc. ("American Premier") (collectively referred to herein as "plaintiffs"), and defendant and cross-defendant Hartford Accident & Indemnity Company ("Hartford") for a determination of the amount of prejudgment interest owed by Hartford to Ferrellgas and American Premier. All three parties have consented in writing to the final and binding disposition of the cross-motions by the undersigned magistrate judge. [*See* Stipulation filed March 12, 1999]. *See generally* 28 U.S.C. § 636(c).

The issues to be determined are: (1) Is the amount owed by Hartford severable into separate claims for indemnity and defense costs? (2) What is the date or dates on which prejudgment interest began to accrue? (3) What is the proper method for applying partial payments already made by Hartford?

### Background

The following chronology of the relevant events, which is undisputed, lays the groundwork for resolution of the legal issues.

May 1, 1985: The underlying liability insurance policies became effective between Hartford, as insurer, and Penn Central Corporation ("Penn Central") and its subsidiary, Buckeye Gas Products Company ("Buckeye"), as insureds. The policies named "Crawford & Company" ("Crawford") as an approved claims adjuster for purposes of administering and servicing claims, including the receipt of written notice of occurrences or claims.

July 1, 1985: Alan Hightower ("Hightower") was injured in a propane explosion.

July 1, 1985: Buckeye notified Crawford of the Hightower accident.

October 2, 1985: Hightower filed a state court action against Buckeye, the seller of the propane delivery system involved in the accident.

December 11, 1986: Ferrellgas acquired Buckeye from Penn Central (now American Premier), including Buckeye's coverage under the insurance policies between Hartford and Penn Central.

December 10, 1987: Hartford sent a letter to Frank B. Hall & Company ("Hall"), its agent and the broker of the policies with Penn Central, stating that "all the documentation we have thus far received" regarding Hightower's claim against Buckeye "would indicate plaintiff's case was worth far less than the underlying coverage of insurance. Because of that documentation, we are at this time closing our file. If you have not received all the documentation and if the injury is potentially worth more than the underlying coverage, we ask that you immediately notify us so that we can reopen our file and monitor the underlying action."

October 12, 1990: A jury returned a verdict of $2,000,000.00 in favor of Hightower and against Buckeye. The net judgment after an offset for workers' compensation benefits was $1,936,000.00.

March 15, 1993: Ferrellgas notified Crawford in writing that Hightower's counsel had requested payment of the judgment plus costs and accrued interest.

March 22, 1993: Ferrellgas and American Premier paid a total of $3,077,485.97 to satisfy the judgment, including prejudgment interest, with each party reserving the right to seek a determination of rights between them.

September 22, 1993: Ferrellgas notified Hartford of the *Hightower* action and judgment.

September 24, 1994: Ferrellgas advised Hartford in writing that it had incurred defense costs in the *Hightower* action in the total amount of $258,743.17.

October 31, 1994: Hartford paid Ferrellgas $288,227.50.

July 19, 1995: Hartford paid Ferrellgas $82,740.46.

## Discussion

■ The parties agree that the computation of prejudgment interest is governed by California law. *See, e.g., American Telephone & Telegraph Co. v. United Computer Systems, Inc.,* 98 F.3d 1206, 1208 (9th Cir.1996); *Northrop Corp. v. Triad International Marketing, S.A.,* 842 F.2d 1154, 1155 (9th Cir.1988). The relevant statute provides in part:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

California Civil Code § 3287(a). The parties further agree that the applicable rate for prejudgment interest in the absence of policy provision to the contrary is seven percent per annum. *See* Cal. Const. art. XV, § 1; Cal.Civ.Code § 3289(b); *see also Michelson v. Hamada,* 29 Cal.App.4th 1566, 1585–1586, 36 Cal.Rptr.2d 343 (1994) (holding that absent a statutory or contractual provision to the contrary, the constitutional rate of seven percent applied to awards of prejudgment interest on damages for breach of a contract entered into before January 1, 1986).

### Severability of the claims for indemnity and defense costs

Plaintiffs contend that they are entitled to prejudgment interest on the judgment, less the amount paid by the insurer on the primary policy, plus defense costs accruing on March 22, 1993, the date on which they incurred a covered loss by paying the *Hightower* judgment. Plaintiffs assert that interest should run on the full amount of the damages from the date of satisfaction of the judgment but, failing that, interest should at least run on the judgment claim from that date. Hartford responds that plaintiffs' damages consist of single

claim encompassing indemnity for satisfaction of the judgment and for defense costs, and that interest does not begin to run on plaintiffs' claim until the amount of defense costs were fixed by plaintiffs' written demand.

Claims or judgments may consist of severable parts for the purposes of computing prejudgment interest. For example, courts have distinguished an award of attorneys' fees from an award of damages for purposes of awarding prejudgment interest, or have calculated prejudgment interest separately for discrete components of a judgment. *See, e.g., Michelson,* 29 Cal.App.4th at 1589, 36 Cal.Rptr.2d 343 (holding that prejudgment interest under Cal.Civ.Code § 3288 started running on different dates, depending on when each particular misappropriation of funds occurred) [1]; *Oil Base, Inc. v. Transport Indemnity Co.,* 148 Cal.App.2d 490, 492, 494, 306 P.2d 924 (1957) (holding that prejudgment interest under § 3287(a) began to run on an indemnity award when the underlying litigation was settled, and on a contractual award of attorneys' fees and costs when judgment was entered in the subsequent coverage case); *Baratta v. S.D. Cohn & Co.,* 656 F.Supp. 1, 6–7 (S.D.N.Y.1985) (awarding prejudgment interest under New York law to a party who was contractually indemnified against "loss, liability, damage and expense, including attorneys' fees" for "both elements of its indemnity claim—the amount paid in settlement [of the underlying litigation] and attorney's fees. The interest should be calculated from the date when the settlement was paid and from the dates when [the indemnitee] paid the fees.").[2]

■ In other contexts, recovery of attorneys' fees and costs is treated as separate and distinct from the recovery of other elements of damages. California and other American jurisdictions follow the

rule that attorneys' fees ordinarily are not recoverable as an element of damages. *See, e.g., Genis v. Krasne,* 47 Cal.2d 241, 246, 302 P.2d 289 (1956) (stating that attorneys' fees recoverable by contract cannot be allowed without pleading and proof of the contract provision); *see generally* 5 Bernard E. Witkin, *California Procedure* Pleading, § 888 (4th ed.1997) (noting that special damages, including attorneys' fees, are "those that are not deemed to be a necessary or usual result of the wrongful act," and must be specially pleaded) (citing *Oliver v. Schene,* 182 Cal.App.2d 473, 484, 6 Cal.Rptr. 461 (1960)); 22 Am.Jur.2d Damages § 611 (collecting cases).

■ In the circumstances of this case, plaintiffs' damages arising from payment of the judgment and litigation expenses are conceptually and practically distinct. Plaintiffs' liability for defense costs arose independently of their liability for the judgment. Plaintiffs could have incurred the former without incurring the latter if, for example, plaintiffs had prevailed in the *Hightower* case. Plaintiffs' liability for the judgment and for the defense costs arose at different times and ran to different parties. The amount of defense costs incurred by plaintiffs cannot be calculated or ascertained from the fact or amount of the judgment.

■ Furthermore, the reasons for awarding prejudgment interest are best served by treating separately plaintiffs' damages arising from payment of the judgment and payment of defense costs. The primary purpose of prejudgment interest is to provide just compensation to the injured party for the loss of use of money during the prejudgment period, and thus to make that party whole as of the date of the injury. *See, e.g., Lakin v. Watkins Associated Industries,* 6 Cal.4th

---

**1.** Cal.Civ.Code § 3288 provides, "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."

**2.** The New York prejudgment interest statute provided that "interest shall be recovered upon a sum awarded for breach of contract and the interest shall be computed from the earliest ascertainable date the cause of action existed." *Baratta,* 656 F.Supp. at 6.

644, 663–664, 25 Cal.Rptr.2d 109, 863 P.2d 179 (1993) ("For more than a century it has been settled that one purpose of section 3287, and of prejudgment interest in general, is to provide just compensation to the injured party for loss of use of the award during the prejudgment period...."); *Wisper Corp. v. California Commerce Bank*, 49 Cal.App.4th 948, 960, 57 Cal.Rptr.2d 141 (1996) ("An award of prejudgment interest is intended to make the plaintiff whole 'for the accrual of wealth which could have been produced during the period of loss.' ") (citation omitted); Michael S. Knoll, A Primer on Prejudgment Interest, 75 Tex.L.Rev. 293, 296 (1996) ("Because justice often takes many years to achieve, interest is added to the original judgment to ensure that compensation is complete.").

The goal of compensation, however, has been tempered by recognition that it is unfair to assess interest against a party who did not know, and could not reasonably have ascertained, the amount owed, leading the California courts to construe the statute equitably to avoid such unfairness. *See, e.g., Western Security Bank, N.A. v. Superior Court*, 15 Cal.4th 232, 253 n. 9, 62 Cal.Rptr.2d 243, 933 P.2d 507 (1997) (noting that an award of prejudgment interest "depended only on whether [the defendant] knew or could compute" the amount the plaintiff was entitled to recover); *Chesapeake Industries, Inc. v. Togova Enterprises, Inc.*, 149 Cal.App.3d 901, 906–907, 197 Cal.Rptr. 348 (1983) (comparing "the general equitable principle that a person who does not know what sum is owed cannot be in default for failure to pay" with "the countervailing policy that injured parties should be compensated for the loss of use of their money" during the prejudgment period, and concluding that the proper test was whether "the defendant actually kn[ew] the amount owed or from reasonably available information could ... have computed that amount"); *Levy–Zentner Co. v. Southern Pacific Transp. Co.*, 74 Cal.App.3d 762, 799, 142 Cal.Rptr. 1 (1977) ("While we are aware of the authorities that allow recovery from the day of the plaintiff's loss, we

find the better articulated argument ... [to be] that where a defendant does not know what amount he owes and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it."); *McConnell v. Pacific Mutual Life Ins. Co.*, 205 Cal.App.2d 469, 478–480, 24 Cal.Rptr. 5 (1962) (explaining that the compensatory theory of prejudgment interest is qualified where the debtor "cannot know what sum he owes"); *see also Wisper Corp.*, 49 Cal.App.4th at 968–970, 57 Cal.Rptr.2d 141 (McDonald, J., concurring in part and dissenting in part) (discussing the application of the "loss" and "penalty" theories of prejudgment interest).

■ With the goals of compensation for the plaintiff and fairness for the defendant in mind, prejudgment interest ordinarily should be computed from the earliest date that the defendant knew, or from available information reasonably could have computed, the amount owed on the plaintiff's claim. The defendant may lack the requisite knowledge because a claim is unliquidated, or because its value cannot be determined by computation or by reference to well-established market values, or because the defendant lacks the means to discover the amount of a liquidated claim. *See, e.g., Cassinos v. Union Oil Co. of California*, 14 Cal.App.4th 1770, 1789–1790, 18 Cal.Rptr.2d 574 (1993) (holding that interest ran from the date of filing of the complaint where the complaint conveyed notice of the demand and the means to calculate damages based on fair market values known to the defendant); *Chesapeake Industries, Inc.*, 149 Cal.App.3d at 913, 197 Cal.Rptr. 348 (refusing to allow prejudgment interest where the defendant lacked the data necessary to compute the amount due); *Leatherby Ins. Co. v. City of Tustin*, 76 Cal.App.3d 678, 688, 143 Cal. Rptr. 153 (1977) (holding that prejudgment interest did not begin to run until a demand was made showing that the conditions for payment had been met); *Levy–Zentner Co.*, 74 Cal.App.3d at 795–798, 801, 142 Cal.Rptr. 1 (reviewing the history

of § 3287 and holding that a damages claim was certain on the date the plaintiff submitted to the insurer its experts' estimates of the covered loss).

The insurance policies do not specify the date or dates on which plaintiffs' claim for defense costs became payable. It is unclear when plaintiffs actually paid all or portions of their defense costs. The parties agree that Ferrellgas did not advise Hartford of the amount claimed as defense costs until September 24, 1994, at least a year after Hartford learned of the amount paid to satisfy the judgment. Plaintiffs do not contend that Hartford reasonably could have computed or ascertained their defense costs from information available to it before September 24, 1994. Hartford's uncertainty regarding the defense costs, however, did not make plaintiffs' claim arising from the judgment uncertain nor did it interfere with Hartford's ability to indemnify plaintiffs for satisfying the *Hightower* judgment. *See Wisper Corp.,* 49 Cal.App.4th at 962, 57 Cal.Rptr.2d 141 ("[W]here the defendant could have timely paid th[e] amount [of a claim that was certain or capable of being made certain] and has thus deprived the plaintiff of the economic benefit of those funds, the defendant should ... compensate with appropriate interest."); *cf. Coleman Engineering Co., Inc. v. North American Aviation, Inc.,* 65 Cal.2d 396, 409, 55 Cal.Rptr. 1, 420 P.2d 713 (1966) (rejecting the contention that prejudgment interest should not be awarded where the plaintiff omitted matters from the original demand in error and made certain downward adjustments to the demand, and analogizing to cases holding that "offsets of the defendant, even where unliquidated, do not preclude the allowance of interest on the balance of the plaintiff's claim"); *Chesapeake Industries, Inc.,* 149 Cal.App.3d at 907, 197 Cal.Rptr. 348 (discussing the rule that the statutory interest allowable under § 3287 cannot be defeated by setting up an unliquidated counterclaim as an offset).

If plaintiffs' claims for indemnity and for defense costs are treated as an indivisible whole, with interest accruing from just one of the competing dates advanced, plaintiffs will either be undercompensated for the use of the money paid to satisfy the judgment (if the later date is selected), or overcompensated for the loss of use of the money paid to fund its defense (if the earlier date is selected). Since aggregating the claims would needlessly frustrate the statute's principal goal of just compensation, the amount of prejudgment interest due on plaintiffs' claim for indemnity for the *Hightower* judgment should be computed separately from that for their claim for defense costs.

**Time when prejudgment interest began to run on the judgment**

Plaintiffs contend that Hartford's knowledge or lack of knowledge about the existence and amount of the *Hightower* judgment is "irrelevant," and that prejudgment interest began to accrue on March 22, 1993, the date on which the judgment was paid. In the alternative, plaintiffs argue that Hartford was put on notice of the claim in 1985 or 1987, when its agents received notice of the accident and the subsequent state court action. Hartford contends that prejudgment interest could not have begun to accrue on the judgment earlier than September 22, 1993, when Hartford claims it first received notice of the existence and amount of the judgment. [*See* Declaration of Jill Fannin ("Fannin Decl.") Ex. B].

The governing insurance policies include a notice provision that provides, in part:

4. *Notice of Occurrence*

It is a condition of this policy that all claims will be administered and serviced by Crawford & Company, E.S.I.S., [Hartford], or any other adjuster approved by the company (hereinafter called the adjuster).

. . . . .

Written notice shall be given to the company or any of its authorized agents as soon as practical after receipt by the insurance manager of The Penn Central Corporation regarding:

(A) Any occurrence which in the Insured's estimate of the value of inju-

ries or damages, without regard to liability, might result in damages in excess of the deductible amount.

(B) Any claim made against the Insured where the ad-damnum is in excess of the deductible amount.

. . . . .

Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time. The company shall be kept advised of subsequent developments of said occurrence or claim in a complete and timely manner.

[*See* Fannin Decl., Ex. C, p. C–28; Ex. D, p. D–72].

On the date Hightower was injured, Buckeye reported the accident to a Crawford office. Crawford sent an investigator to interview Hightower, and a report was forwarded to another Crawford office with a request for further instructions. [*See* Declaration of Paul S. White ("White Decl."), Exs. B & C]. It is unclear what further steps, if any, Crawford or Buckeye took with respect to the claim.

Hartford subsequently admitted that it "received notice of the existence of the *Hightower* action in late 1987 . . . ." [*See* Fannin Decl., Ex. G, p. G–116]. In December 1987, a Hartford claims supervisor sent a letter regarding the *Hightower* action to Hall, an "authorized Hartford agent." [*See* White Decl., Ex. D; Fannin Decl., Ex. G, p. G–116]. The letter states:

> In our conversation I indicated to you that all the documentation we have thus far received would indicate plaintiff's case was worth far less than the underlying coverage of insurance. Because of that documentation, we are at this time closing our file. If you have not received all the documentation and if the injury is potentially worth more than the underlying coverage, we ask that you

immediately notify us so that we can reopen our file and monitor the underlying action.

This letter indicates that Hartford had been supplied with pertinent information about the case. Although the letter places the burden on Hall to notify Hartford of any information indicating its exposure under the policies, nothing in the record establishes that the letter or its contents were communicated to plaintiffs.

Hartford denies that Hall provided it with any further information about the *Hightower* claim. Hartford has admitted, however, that Hall had notice of the *Hightower* judgment, and that Hartford's decision to make a policy payment to Ferrellgas was motivated, in part, by its agent's knowledge. [*See* Fannin Decl., Ex. G, p. G–116]; [*see also* Declaration of Ronn Kreps ("Kreps Decl."), Ex. 3, p. 9]. Hartford also has acknowledged that "given the broker documents produced," Hartford "presumably received notice of the [*Hightower*] claim *prior to judgment*. . . . " [*See* Kreps Decl., Ex. 4 (emphasis added) ].

Ferrellgas also contends that Crawford was on notice of the judgment from the date it occurred. [*See* Kreps Decl., Ex. 3, p. 9]. At a minimum, the evidence submitted by Hartford indicates that Crawford had actual knowledge of the amount of the judgment with costs and accrued interest no later than March 15, 1993. On that date, Louis A. Huber, III, faxed a letter and attachment regarding the *Hightower* judgment to Rhonda Smiley, General Counsel for Ferrellgas, Michael Cioffi, Legal Counsel for Penn Central, and Brain Dilger, Account Administrator for Crawford.[3] The letter reads as follows:

Dear Rhonda, Brian, and Michael:

> Attached is a copy of a letter from plaintiff's attorney dated March 12, 1993.[4]

---

**3.** A 1992 litigation report for Ferrellgas indicates that Mr. Huber was trial counsel for Ferrellgas in the *Hightower* action. [*See* Fannin Decl., Ex. B].

**4.** The attachment is not part of the record.

I have confirmed that the three checks the plaintiff requests total the amount of the judgment, plus costs and interest through March 4, 1993.

As you can see, the plaintiff's counsel has stated that time is of the essence with regard to satisfaction of the judgment and has asked to be advised when the checks will be received. For your information, the per diem interest rate on the total judgment is $532.16.[5]

■ Under the notice provision contained in the policies, Ferrellgas could elect to give written notice of an occurrence or claim to Crawford. Ferrellgas was not obliged to notify Hartford directly. Mr. Huber's letter qualifies as "written notice" of an occurrence or claim within the meaning of the notice provision. Under both the parties' agreement and well-settled principles of agency law, Crawford's knowledge of the *Hightower* judgment and the demand for payment as of March 15, 1993, may be imputed to Hartford, Crawford's principal.[6] *See Bumb v. American Home Assurance Co.,* 246 F.Supp. 509, 516–517 (S.D.Cal.1965) (noting that written notice of the loss was "seasonably given" to the insurer through its adjuster). Crawford's receipt of the notice was within the course and scope of its agency. Therefore, Hartford is bound by Crawford's knowledge, even if Crawford did not properly forward notice of the claim to Hartford. *Cf. Chase v. National Indemnity Co.,* 129 Cal.App.2d 853, 863–864, 278 P.2d 68 (1954) (holding that an insurer was bound by a policy issued in reliance on misrepresentations made by its agent, who was acting within the course and scope of his agency, and that the insured was entitled to prejudgment inter-

est from the date when the insurer should have paid the loss).

Accordingly, Hartford knew, or had available to it information from which it reasonably could have ascertained, the amount of the *Hightower* judgment plus costs and accrued interest as of March 22, 1993, the date on which plaintiffs paid the judgment. *See Highlands Ins. Co. v. Continental Casualty Co.,* 64 F.3d 514, 521–522 (9th Cir.1995) (affirming an award of prejudgment interest from the date on which the plaintiff paid the claim where the defendant insurer's counsel had notified his client in writing that the case had been settled, and had attached the closing papers).

Awarding plaintiffs prejudgment interest on the amount of the judgment from the date of payment is consistent with the goals of compensation and fairness underlying · the prejudgment interest statute. By designating agents to service claims on its behalf, Hartford assumed the risk that its agents would fail to notify it of a valid claim, or otherwise act to its detriment. In the circumstances of this case, the potential unfairness of assessing interest against Hartford despite its lack of actual knowledge of the amount of the judgment is outweighed by the greater unfairness of depriving plaintiffs of compensation when they apparently complied in good faith with the terms of the policies. Accordingly, plaintiffs are entitled to prejudgment interest at the rate of seven percent per annum from March 22, 1993, on the outstanding principal balance owed by Hartford as a result of its liability to plaintiffs under the policies arising from plaintiffs' payment of the *Hightower* judgment. The parties have stipulated that, based on Judge Timlin's prior rulings, Hartford is liable to plaintiffs for a total principal balance of $1,336,229.14 for the judgment and defense costs.[7] [*See* Stipulation of Facts

---

5. In the absence of any indication to the contrary, it is assumed that a letter was mailed on the date it was signed and that it was received by the addressee shortly after that date.

6. During the hearing on the motions, Hartford argued that Crawford was not its agent because plaintiffs originally selected or re-

tained Crawford as a claims adjuster. Hartford does not deny, however, that Crawford was approved as a claims adjuster by Hartford and was authorized as its agent to service claims by the express terms of the policies.

7. Hartford is liable for the amount of the judgment and defense costs in excess of

filed February 2, 1999, p. 3]. Of that amount, $1,077,485.97 is attributable to the judgment.[8]

**Time when prejudgment interest began to run on the defense costs**

■ Plaintiffs made a written demand for defense costs in the amount of $258,743.17 on September 24, 1994. The policies do not specify when claims for defense costs are payable. Plaintiffs do not contend that Hartford knew, or had available to it information from which it reasonably could have calculated, the amount of plaintiffs' claim for defense costs before that date. Plaintiffs therefore are not entitled to prejudgment interest on their claim for defense costs until September 24, 1994, the date of their demand. *Cf. Paramount Properties Co. v. Transamerica Title Insurance Co.*, 1 Cal.3d 562, 572–573, 83 Cal.Rptr. 394, 463 P.2d 746 (1970) (holding that where the insurance policy did not fix the date on which defense costs became payable, and the plaintiff claimed interest under § 3287(a) from the date on which its attorney sent a written demand for payment to the defendant, it was unnecessary to decide whether interest might have begun to accrue at an earlier date).

**Application of Hartford's partial payments**

■ The application of Hartford's partial payments in this case is governed by *Newby v. Vroman*, 11 Cal.App.4th 283, 288–289, 14 Cal.Rptr.2d 44 (1992). In *Newby*, the California Court of Appeals decided an analogous issue under California Civil Code § 3288, which allows a jury to award prejudgment interest in cases not arising from a contract. The question before the court was how interest under § 3288 should be calculated when, prior to entry of judgment against a nonsettling tortfeasor, a joint tortfeasor settles with plaintiff in good faith, thereby reducing the amount of that judgment.

Explaining that prejudgment interest compensates for "the accretion of wealth that particular property could have pro-

duced during a period of loss," the court concluded that the plaintiff would be fully compensated by receiving prejudgment interest "*up to the date of settlement* on the total judgment … and prejudgment interest *after the date of settlement* only on the balance of the total judgment remaining after its reduction by the settlement sum paid." *Newby*, 11 Cal.App.4th at 288–289, 14 Cal.Rptr.2d 44 (emphasis added). As the court noted "[w]ere the rule otherwise, plaintiffs would clearly be doubly compensated by first receiving the use and benefit of a partial settlement sum, and thereafter obtaining the additional compensation of continuing prejudgment interest" on the judgment. *Newby*, 11 Cal.App.4th at 290, 14 Cal.Rptr.2d 44. Thus, prejudgment interest continued to accrue on the total judgment through the date the settlement sum was paid, and only after that date did interest accrue on the reduced amount.

■ That reasoning applies here. Plaintiffs may recover only simple interest, and therefore may not compound the interest owed by adding unpaid interest to the principal balance. *See Westbrook v. Fairchild*, 7 Cal.App.4th 889, 893–894, 9 Cal. Rptr.2d 277 (1992) (discussing the rule that statutory interest accrues only on unpaid principal, and may not be computed on accrued interest in the absence of specific statutory authority or the parties' agreement). Moreover, if the partial payments were applied first to interest, and only then to principal, as advocated by plaintiffs, the effect would be to overcompensate plaintiffs by giving them the use and benefit of interest payments before the expiration of the prejudgment period.

Accordingly, plaintiffs are entitled to prejudgment interest at seven percent per annum (1) from March 22, 1993, up to and including October 31, 1994 (589 days), on the sum of $1,077,485.97, which equals $121,711.63; (2) from September 24, 1994, up to and including October 31, 1994 (38 days), on the sum of $258,743.17, which

---

$2,000,000.00. [*See* Stipulation of Facts filed February 2, 1999, p. 3].

**8.** The application of Hartford's payments to date is discussed at pages 17–18, *infra.*

equals $1,885.64; (3) from November 1, 1994, up to and including July 19, 1995 (261 days), on the sum of $1,048,001.64 (that is, $1,077,485.97 + $258,743.17 − $288,227.50), which equals $52,457.51; (4) from July 20, 1995, up to and including December 13, 1999 (1,608 days), on the sum of $965,261.18 (that is, $1,048,001.64 − $82,740.46), which equals $297,670.68; and (5) thereafter at the rate of seven percent per annum on the unpaid principal of $965,261.18 (or approximately $185.12 per day) until the date of entry of judgment or payment in full of that amount.[9]

### Conclusion

For the reasons stated above, Ferrellgas and American Premier are entitled to an award of prejudgment interest under California Civil Code § 3287(a) in accordance with the principles set forth above in the amount of $473,725.46, representing prejudgment interest through December 13, 1999. Prejudgment interest shall continue to accrue on the unpaid principal of $965,-261.18 at seven percent per annum until the date of entry of judgment in this case or payment in full of the outstanding principal balance.

**IT IS SO ORDERED.**

---

9. The parties have stipulated that Hartford has already paid $370,967.96 to Ferrellgas on the *Hightower* claim, which reduces "the amount that would be payable by Hartford from $1,336,229.14 to $965,261.18." That stipulation regarding the remaining principal balance is consistent with the Court's disposition of this issue.